**Leonard D. COX, Appellant,**

v.

**Viveca Yvette COX, Appellee.**

**No. S–2727.**

Supreme Court of Alaska.

June 30, 1989.

As Amended June 30, 1989.

Ernest Z. Rehbock, Rehbock & Rehbock, Anchorage, for appellant.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

In this divorce case the parties entered into a child support agreement which provided:

[The] father shall pay reasonable child support to mother for the care of the minor child. At the present time father is disabled and receiving term disability income. Therefore the parents agree that the sum of $350.00 per month shall be a reasonable support and that such support shall continue for a period of one year from the date of this agreement. Thereafter support shall be 20% of Mr. Cox's then monthly income available for support as calculated in accordance with Alaska Rules of Civil Procedure 90.3. For the purposes of determining these support obligations from time to time father shall provide an affidavit one year from the date of this agreement setting forth his then present income for the purposes of calculation of such support.... If upon furnishing the affidavit of income provided for herein, an adjustment of support from the present level appears appropriate, such support shall be adjusted on an annual basis one month following the furnishing of such affidavit and the so adjusted amount shall continue in force and effect for pending the furnishing of further updated income information by affidavit.

The parties presented the substance of this agreement to Master Andrew Brown during an October 1987 hearing. Following testimony that Leonard received $2,400 a month in worker's compensation payments, Master Brown questioned the proposed $350 per month child support award. He noted that under Civil Rule 90.3(a)(2)(A) Leonard should pay $480 (20% of $2,400). Master Brown indicated, however, that he would recommend that the superior court grant the divorce and approve the child support agreement after receiving Child Support Guidelines Affidavits from each party justifying the lesser child support amount.

Yvette filed an affidavit with the court which stated that her previous twelve months' adjusted income was $24,885.91. Leonard's affidavit indicated that he had received a monthly permanent partial disability annuity of $2,401 since February 1987 which would expire at the end of 1988. He further stated that it was his "understanding" that the annuity payments represented compensation for loss of future earning capacity and did not represent present income or disability income. Therefore, Leonard concluded, the annuity was non-taxable and not to be considered as income available for child support.

On February 10, 1988 Master Brown filed his report. He concluded that Civil Rule 90.3(a)(1) requires the court to take into account "the parents' total *income from all sources*," including workers' compensation benefits. (Emphasis in original). Master Brown also rejected the Coxes' plan of annual modification of child support as judicially and administratively burdensome and contrary to the purpose of Civil Rule 90.3. He concluded, instead, that if there is a future change in financial conditions either party can seek adjustment of the support award under *Curley v. Curley*, 588 P.2d 289 (Alaska 1979). He recommended that the superior court ignore the Coxes' child support agreement and order Leonard

to pay $480.20 per month in child support beginning March 1, 1988.

Leonard filed an objection to Master Brown's Report.[1] After considering Leonard's arguments, the trial court approved the Master's Report and ordered Leonard to pay $480.20 per month in child support. Leonard appeals the court's child support award.

Leonard raises two points on appeal: (1) that the court erred in refusing to approve the initial child support agreement of $350 per month for the first year and (2) that the court abused its discretion in requiring Leonard to pay $480.20 per month after the first year of the agreement.

Alaska Civil Rule 90.3 provides in relevant part:

(a) Guidelines. A child support award in a case in which one parent is awarded sole or primary physical custody will be calculated as an amount equal to the adjusted annual income of the non-custodial parent multiplied by a percentage specified in subparagraph (a)(2).

. . . .

(2) The percentage by which the noncustodial parent's adjusted income must be multiplied in order to calculate the child support award is:

(A) 20% (.20) for one child;

. . . .

(c) Exceptions.

(1) The court may vary the child support award as calculated under paragraph (a) . . . for cause. The court must specify in writing the reason for the variation. Good cause may include a finding:

(A) that unusual circumstances, such as especially large family size, significant income of a child, health or other extraordinary expenses, or unusually low expenses, exist which require variation of the award in order to award an amount of support which is just and proper for the parties to contribute to-

---

**1.** Leonard argued: (1) that parties should be allowed to alter Rule 90.3 by contract; (2) that workers' compensation benefits are not "income" under Rule 90.3; (3) that under the circumstances of this case, Rule 90.3 should have

been varied; (4) that the yearly variance agreed to by the parties was reasonable; and (5) that a court cannot approve only part of a particular contract.

ward the nurture and education of their children. The court shall consider the custodial parent's income in this determination; or

(B) a finding that the parent with the child support obligation has an adjusted income which is below the poverty level as set forth in the Federal Register. However, a parent who would be required to pay child support pursuant to paragraph (a) or (b) must be ordered to pay a minimum child support amount of no less than $40.00 per month except as provided in subparagraphs (a)(3) and (b)(4).

■ Leonard's first argument is that voluntary agreements for child support should be approved even though they provide for child support payments lower than those called for under Civil Rule 90.3, absent a finding that the agreement would be contrary to the best interests of the child. As support for this argument he relies on *Malekos v. Yin*, 655 P.2d 728 (Alaska 1982). There we held that parents could by oral agreement waive court-ordered child support so long as doing so was not deleterious to the child:

We adopt the rule that a custodial parent may waive child support payments established by a prior decree, and that such a waiver precludes the recovery of arrearages absent a finding of detriment to the child. Parents bear both a statutory and moral obligation to support their child until emancipation or majority. This obligation is not extinguished by divorce. Viewed in this light, child support obligations imposed by a divorce decree allocate the burden of the parents' joint responsibility to provide their child with adequate support. While par-

ents may not by waiver or otherwise eviscerate their child's right to adequate parental support, we see no compelling policy considerations to refuse to enforce a custodial parent's waiver of child support from a noncustodial parent, providing that such agreements are executed without fraud or duress, and providing that enforcement is not deleterious to the child.

*Id.* at 730–731 (citations omitted).[2]

*Malekos*, however, was decided before we adopted Civil Rule 90.3.[3] The rule is designed to apply to all awards of child support, whether agreed to by the parties or contested. The following history of the rule makes this clear.

The rule is a product of the Federal Child Support Enforcement Amendments of 1984.[4] Under these amendments, Congress required each state to establish guidelines to assist in determining the amount of child support awards. Congress' goal in requiring the guidelines was to assure that child support awards, which generally are inadequate, would reflect a realistic assessment of both the child's needs and the parents' ability to pay. S.Rep. No. 387, 98th Cong., at 40, *reprinted in* 1984 U.S.Code Cong. & Admin.News 2397, 2436.[5] The guidelines also provide a means whereby courts may provide greater consistency and predictability in awarding child support. S. Goldfarb, *Child Support Guidelines: A Model for Fair Allocation of Child Care, Medical and Educational Expenses*, XXI Fam. L.Q. 325, 326 (1987).

In response to the federal mandate, the Governor of Alaska appointed a thirteen-member commission on child support en-

2. Justices Rabinowitz and Matthews dissented from the majority's conclusion. 655 P.2d at 733–35.

3. Civil Rule 90.3 was adopted effective August 1, 1987.

4. Pub.L. No. 98–378, § 18(a), 98 Stat. 1321 (1984) (codified at 42 U.S.C. § 667 (Supp.1987)) (amending Title IV–D of the Social Security Act).

5. In 1985, the average court-ordered child support award was only $2,390 per year, or $199

per month. Bureau of the Census, U.S. Dep't of Commerce, Child Support and Alimony: 1985, Current Population Reports, Special Studies, Series P–23, No. 152 at 1 (1987). This figure represents approximately one-fourth of the amount spent on children in a middle income household, and the resulting standard of living is only 80% of the poverty level. *See* C. Brackney, *Battling Inconsistency and Inadequacy: Child Support Guidelines in the States*, 11 Harv. Women's L.J. 197, 199 (1988).

forcement whose findings and recommendations became the basis for Rule 90.3. Their report, the *Report of the Child Support Enforcement Commission to the Honorable Governor William J. Sheffield*, dated October 1, 1985, recommended the development of a presumptive use formula for judicial and administrative establishment and modification of support orders. *Id.* at III–2. The report emphasized that the "methods for setting support orders must be uniform and apply to all cases, except where special circumstances prevail." *Id.* at V–1. Concerning private child support agreements the commission stated:

Courts should inquire into the background of child support agreements if the order seems incommensurate with the facts (one measure being if it is lower than the guideline amount). This concept is hardly new; parent agreements on child support have always been subject to court approval and modification.

*Id.* at VII–15.

The Commission noted that "[t]he amount of child support ordered in many cases is insufficient to raise children not only because inadequate support was ordered initially, but because the value of support diminishes over time from changes in the cost of living and inflation." *Id.* at III–10. Moreover, the Commission recognized that many parents do not fully appreciate the costs associated with raising children:

Since the most significant expenditures on children are commingled with expenditures for the total household in such categories as food, housing, and transportation, many of the normal costs of children are hidden from judges and parents alike.

*Id.* at VI–1.

In short, the guidelines reflect a paternalistic view toward child support agreements which conflicts with the freedom of contract attitude exemplified by *Malekos*. The guidelines' view reflects the congressional findings that child support is often set at inadequate levels and the Commission's conclusion that many parents underestimate actual child support costs. We therefore conclude that the decision in *Malekos* has been superceded by Rule 90.3. Parents may not make a child support agreement which is not subject to the rule.[6]

---

**6.** The legislature in 1984 enacted AS 47.23.065, which provides:

    (a) A custodian of a child, including a custodial parent, owes a duty to that child to ensure that child support is paid by a noncustodial parent who is obligated to pay it. An agreement to waive past or future child support, made between an obligor and a person who is entitled to receive support on behalf of an obligee, is not enforceable unless

    (1) the agreement is put in writing at the time the agreement is made; and

    (2) the agreement is signed at the time it is made by both the obligor and the person acting for the obligee.

    (b) When the right to receive child support has been assigned to a governmental entity, an agreement under (a) of this section that has not been adopted as an administrative order of the agency is not effective during a period when the obligee is receiving public assistance under AS 47.25.310–47.25.420.

    (c) In a separation, dissolution, or divorce proceeding, a court may not accept a waiver of support by a custodial parent without proof that the custodial parent can support the needs of the child adequately.

This statute was enacted after *Malekos* was decided, but before promulgation of Civil Rule 90.3. One purpose of the statute is evidently to limit this court's holding in *Malekos* by requiring signed, written agreements waiving child support, as well as a judicial finding that the custodial parent can support the needs of the child adequately. While it is reasonably arguable that the legislature in enacting this statute intended a positive declaration that signed, written waivers of child support would be effective where the custodial parent could support the needs of the child adequately, we do not so interpret the statute. The legislative findings accompanying the enactment, ch. 144, § 1, Temporary and Special Acts and Resolutions of 1984, speak of enhancing the efforts of those who are seeking to enforce the payment of child support obligations, the hardship experienced by children and families who must rely on support from a non-custodial parent, and the cost that must be borne by the general public because of inadequate support from non-custodial parents. No mention is made of the benefits which might flow from allowing parents to enter into agreements waiving child support. Thus, the mere fact that an agreement may comply with this statute does not mean that it is free from the operation and effect of Rule 90.3. Our holding that parties cannot by contract evade the operation of Rule 90.3 therefore does not conflict with this statute.

Further, we conclude that the court did not err in refusing to depart from the guidelines. The presumption imposed by the rule is that the guidelines are applicable and may be departed from only for good cause. We do not mean to suggest that the court could not have found good cause in the present case based on actual expenses, Yvette's income, and the nature of the income received by Leonard. We conclude, however, that the court was not required to find that good cause existed merely because the parties had reached an agreement.

We are aware of only two cases from other jurisdictions which address this issue in the context of the new federally-mandated child support guidelines. *Peerenboom v. Peerenboom*, 147 Wis.2d 547, 433 N.W.2d 282, 285 (1988); *Ching v. Ching*, 751 P.2d 93, 96 (Haw.App.1988). Both cases conclude that an agreement between the parties as to child support is not an exceptional circumstance justifying deviations from the guidelines, where the agreement requires support less than that called for by the guidelines. We agree with these holdings.

Leonard's second argument is that the court abused its discretion in setting child support after the one year specified in the parties' agreement at $480 per month, rather than at 20% of Leonard's then monthly income.

We find no abuse of discretion. First, the trial court's reluctance to express child support as a percentage of monthly income rather than a fixed sum seems soundly based. The regulations issued by the Federal Office of Child Support Enforcement pursuant to the Federal Child Support Enforcement Amendments of 1984 require that state guidelines "be based on specific, descriptive and numeric criteria and result in a computation of the support obligation." 45 CFR § 302.56(c) (1987). Second, it would be an obvious burden on the state child support enforcement agency to recalculate the amount of the child support due based on each month's varying income figures. As a practical matter it may be that the best that can be done is to make a prediction of annual income for the foreseeable future and enter a specific award based upon that prediction, with the understanding that the award is subject to prospective modification.

The judgment is AFFIRMED.