**Debbie M. NIX, Appellant,**

v.

**Daniel L. NIX, Appellee.**

**No. S–4916.**

Supreme Court of Alaska.

July 23, 1993.

Maryann E. Foley, Anchorage, for appellant.

Allen M. Bailey, Law Offices of Allen M. Bailey, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

Debbie and Daniel Nix were married in 1984 and have one child, born in 1986. Debbie and Daniel petitioned for dissolution of their marriage and the superior court entered a decree of dissolution in February 1990. The decree required Daniel to pay Debbie monthly child support in the amount of $936.

A letter written sometime after the hearing on their petition for dissolution,[1] signed only by Debbie, states her agreement to reduce the child support payments to $300 per month until such time that Debbie asks Daniel to increase the amount back to $936 per month. Daniel acknowledges that Debbie eventually exercised this right. He then increased the child support payment to the full $936 per month. After a period of time, the Child Support Enforcement

---

1. The letter is dated February 1, *1989.* Both parties agree, however, that the date "1989" was incorrect and that the letter was actually written and signed after the dissolution hearing, but before entry of the decree, in 1990.

Division (CSED) claimed that Daniel was $8,841.54 in arrears on his child support payments. These arrearages accrued because Daniel had reduced his child support payments to $300 per month in accordance with the letter. When presented with the letter, the CSED did not recognize its effect and continued to consider Daniel in arrears.

After the CSED's claim of arrearages, Daniel filed a motion to vacate the child support arrears with the superior court. In an order dated November 22, 1991, the superior court granted Daniel's motion without any accompanying explanation. Debbie appeals.

Debbie raises two main arguments against the validity and effect of the letter. First, she argues that a child support waiver, to be valid, must be presented to the court for approval at or prior to the time the court enters its decree. Absent such initial judicial approval, Debbie argues that a child support waiver cannot be given binding effect. Second, Debbie argues that even if pre-decree judicial approval is not required, a child support waiver is not valid *until* given judicial approval. In other words, a child support waiver is only valid prospectively, *i.e.*, from the date of judicial approval. We rejected both arguments under similar facts in *Malekos v. Yin*, 655 P.2d 728 (Alaska 1982). Since *Malekos*, however, AS 25.27.065[2] and Alaska Civil Rule 90.3 have come into being. The question, then, is how these subsequent developments change the results otherwise dictated by *Malekos*.

We have previously explained the history and intended effect of Rule 90.3, as well as its interplay with AS 25.27.065. *Cox v. Cox*, 776 P.2d 1045 (Alaska 1989). As noted in *Cox*, Rule 90.3 grew out of the Federal Child Support Enforcement Amendments of 1984.[3] The federal act sought to push states towards "greater consistency and predictability in awarding child support." *Id.* at 1047. The federal measure reflected Congress' belief that "child support is often set at inadequate levels." *Id.* at 1048. In response to the federal act, Rule 90.3 was developed. Whereas *Malekos* accorded the parents a measure of freedom in bargaining away child support, Rule 90.3's "guidelines reflect a paternalistic view toward child support agreements." *Id.* Thus, a court may deviate from the Rule 90.3 child support schedule only upon "good cause" and a court is "not required to find that good cause existed merely because the parties had reached an agreement." *Id.* at 1049.

Given Rule 90.3's negative view of party autonomy concerning child support, AS 25.27.065's provision for child support waivers could have proved troublesome. As we noted, "it is reasonably arguable that the legislature in enacting [AS 25.27.065] intended a positive declaration that signed, written waivers of child support would be effective where the custodial parent could support the needs of the child adequately." *Id.* at 1048 n. 6. We declined to so hold, however, because:

> The legislative findings accompanying the enactment [of as 25.27.065] speak of enhancing the efforts of those who are seeking to enforce the payment of child support obligations, the hardship experienced by children and families who must rely on support from a non-custodial parent, and the cost that must be borne by the general public because of inadequate child support from non-custodial parents. *No mention is made of the benefits which might flow from allowing parents to enter into agreements waiving*

---

**2.** (a) ... An agreement to waive past or future child support, made between an obligor and a person who is entitled to receive support on behalf of an obligee, is not enforceable unless

    (1) the agreement is put in writing at the time the agreement is made; and

    (2) the agreement is *signed* at the time it is made by *both* the obligor and the person acting for the obligee.

    . . . .

    (c) In a separation, dissolution, or divorce proceeding, a court may not accept a waiver of support by a custodial parent without proof that the custodial parent can support the needs of the child adequately.

AS 25.27.065(a), (c) (emphasis added).

**3.** Pub.L. No. 98–378, § 18(a), 98 Stat. 1321 (1984) (codified at 42 U.S.C. § 667 (Supp.1987)).

*child support.* Thus, the mere fact that an agreement may comply with this statute does not mean that it is free from the operation and effect of Rule 90.3. Our holding that the parties cannot by contract evade the operation of Rule 90.3 therefore does not conflict with this statute.

*Id.* (emphasis added).

■■■ *Cox,* then, established that no parental agreement regarding child support is valid until it receives judicial scrutiny under Rule 90.3. This principle leads us to three conclusions relevant to the present case. First, a child support waiver is *not* valid and enforceable *until* a court has reviewed and approved the waiver's substantive adequacy under Rule 90.3. Second, where a child support award has been established through an initial dissolution proceeding, any subsequent proposed waiver must be presented to the court for review under the modification procedures provided for in Rule 90.3(h)(1).[4] Third, a child support waiver presented after the initial dissolution proceeding will be given only prospective effect from the date of judicial approval.[5]

■■■ Our first and third conclusions above dispose of the present case. Under the first and third conclusions, the child support waiver at issue in this case could only receive prospective effect from the date of the superior court's order. Daniel admits, however, that Debbie has validly revoked the waiver as to any *future* child support. Thus, the letter of waiver had no effect. For this reason, we REVERSE the order of the superior court and REMAND for further proceedings.

■■■■■■■■■

---

**4.** Civil Rule 90.3(h)(1) provides:
   A final child support award may be modified if allowed by federal law or upon a showing of a material change of circumstances as provided by state law. A material change of circumstances will be presumed if support as calculated under this rule is more than 15·

---

percent greater or less than the outstanding support order.

**5.** This result flows from Rule 90.3(h)(2)'s prohibition against retroactive modification of child support arrearages.