Susan **RICHMOND**, Appellant,

v.

Frank **PLUID**, Appellee.

No. S–6765.

Supreme Court of Alaska.

Oct. 25, 1996.

Kathleen A. Weeks, Law Offices of Kathleen A. Weeks, Anchorage, for Appellant.

Thom F. Janidlo, Law Offices of Thom F. Janidlo, Anchorage, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

MATTHEWS, Justice.

Frank Pluid and Susan Richmond were never married. They had one child, born in

---

1982. Susan moved out of the residence she shared with Frank in 1989. In March 1989 Frank was indicted. Eventually the indictment was dismissed.

On May 8, 1989, the parties signed a custody and child support agreement that obligated Frank to pay $830.37 per month in child support. On the same day that the parties executed the child support agreement, they also executed a "Partial Waiver of Child Support," in which they agreed that Frank's obligation to pay any child support over $300 was waived. This document also stated that the agreement and waiver was "based on the fact that Frank Pluid has consistently provided clothing and other necessities for [the child] and he agrees to continue to do so, thereby paying a substantial amount of support in kind." There was a post-it note attached to Frank's copy of the waiver document that said "Frank DO NOT FILE w court Keep this in case it becomes necessary in the future if any welfare is involved —D ZWINK.[1]"

On July 14, 1989, there was a custody hearing before Master Joseph O'Connell in Palmer. Susan and her attorney were present, but Frank was not. At the hearing, Master O'Connell recommended approval of the settlement agreement which set the child support at $830.37 per month. The master was not made aware of the waiver document.

Although Master O'Connell made his recommendations in July 1989, there was no order entered approving the parties' agreement until Judge Beverly Cutler entered such an order on February 23, 1993, nunc pro tunc to July 14, 1989. The order provided that "[t]his document shall constitute a judgment."

From July 1989 until December 1991, Frank paid $300 per month in child support, plus additional miscellaneous expenses. From December 1991 until September 1993 he paid $400 per month. In the summer of 1993 Susan went to the Child Support Enforcement Division to attempt to collect on the child support she said she was owed under the settlement, claiming that Frank should have been paying her $830.37 per month since 1989. Frank then filed a motion for relief from the February 23, 1993 judgment pursuant to Civil Rule 60(b). On March 10, 1994, Susan filed a motion to reduce child support arrearages to judgment, seeking to collect $21,832.74 in arrears.

Hearings on these motions were held before Master Andrew Brown on May 27, June 30, July 15, and July 20, 1994. At these hearings Susan testified that she only signed the waiver because she believed it likely that Frank would be incarcerated, and she would have to go on welfare. She claims that she thought the purpose of the waiver was to provide a "future means to promptly modify Pluid's obligation of $830.37 monthly child support if he were incarcerated and Pluid would thereby avoid incurring punitive arrearages." Frank stated that the $300 per month figure was based on the fact that Susan was receiving $250 per month child support for her other children and did not need more than that for their child, and that Frank would reimburse her for expenses above $300 per month.

Master Brown did not find it necessary to determine which party was telling the truth about the reasons for the waiver of child support, because he concluded that the waiver was invalid under *Cox v. Cox*, 776 P.2d 1045, 1048 (Alaska 1989). He recommended that the court not give the waiver any effect, that the Rule 60(b) motion be denied, that judgment for arrearages of $21,832.74 be entered against Frank, and that Frank's ongoing support obligation should continue to be $830.37 per month.

The trial court accepted and adopted the master's findings of fact but came to different legal conclusions. Because the parties claimed to have been unaware of *Cox*, which was decided two weeks before the 1989 uncontested hearing but after the child support waiver agreement was signed, and the parties' actions were in keeping with the waiver, the court concluded that "the parties intended to waive child support, and that there was good cause to waive the child support" until Frank received notice of Susan's efforts to void the agreement by moving for arrearag-

1. David Zwink was Susan's attorney.

es. The court set the child support payments at $830.37 from the time of such notice, which was received by Frank in July 1993. Susan appeals, claiming that the partial child support waiver agreement should not have been given effect.

The judgment entered on February 23, 1993, nunc pro tunc to July 14, 1989, requiring Frank to pay child support of $830.37 per month, was presumptively valid. Like other judgments, it was subject to being set aside pursuant to the procedures and grounds set forth in Civil Rule 60(b). The trial court did not refer to Rule 60(b) or any of the grounds listed in the rule which might justify relief from a judgment. The master in his recommendation addressed Frank's Rule 60(b) motion and recommended that it be denied.

█ We agree with the master's analysis and set it forth here:

Mr. Pluid's Sept. 3, 1993 Motion for Relief relies on various Civil Rule 60(b) theories. However, none are applicable in light of the parties' conduct.[6] There was no 60(b)(1) "mistake, inadvertence, surprise or excusable neglect" by the parties in July 1989, because they deliberately did what they set out to do—enter into a side agreement on support and not inform the court about it. Mr. Pluid cannot now claim that he made a mistake when he intentionally held from the court the very document which might have caused the court to inquire if the amount of support was to be different from the $830.37 in the Agreement of the Parties.

Mr. Pluid has also alleged the possibility that 60(b)(3) applies as to "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." However, *both parties* conspired to keep the waiver document from the court. There was insufficient evidence to make any finding that Ms. Richmond or her attorney used overbearing influence on Mr. Pluid, so that he would not be able to make his own choice. The evidence clearly showed that *both parties* misled the court, but that is not good cause to relieve either of their misconduct, since one of the main reasons for their misconduct—the possibility of Mr. Pluid

going to jail and losing his high income with Ms. Richmond going on welfare— never came about.

To have been a "fraud on the court" it would have to been shown to be " 'the most egregious conduct involving a corruption of the judicial process itself.' " *Allen v. Bussell,* 558 P.2d 496, 500 (Alaska 1976). Here, the parties' misconduct of hiding their wavier agreement only resulted in the court entering a support order for the very amount required by Civil Rule 90.3(a). So they may have attempted to thwart the court, but in the end they failed. Therefore, 60(b)(3) relief is not called for.

The final possible 60(b) relief would be under subsection (6)'s "any other reason justifying relief from the operation of the judgment." The following from *Hartland v. Hartland,* 777 P.2d 636, 645 (Alaska 1989) is very apropos:

Relief under 60(b)(6) is inappropriate when a party takes a deliberate action they later regret as a mistake. See *O'Link [v. O'Link],* 632 P.2d [225] at 229–30 [(Alaska 1981)] (quoting Wright and Miller). As Professor Moore notes, "a party who takes deliberate action with negative consequences, or who makes an informed choice as to a particular course of action will not be relieved of the consequences when it subsequently develops that the choice was unfortunate." 7 J. Moore, Moore's Federal Practice § 60.22, at 60–182 (1985).

Mr. Pluid intentionally kept the Partial Waiver of Support document from the court. Without that document the court had no means to determine if there should have been a variation in or credit for support under Civil Rule 90.3(c). The information the court was given about Mr. Pluid's income was from his own hand and was accurate, so the approval of the $830.37 per month amount was proper.

While Mr. Pluid may face a large arrearage judgment, as noted below, due to not paying the full $830.37 per month from July 1989, that does not amount to an extraordinary reason for 60(b)(6) relief. "As to relief under the catch-all provision of 60(b)(6), this court has stated that only

extraordinary cases are subject to relief under this section." *Hartland,* 777 P.2d at 645. Mr. Pluid has not proven that had the court known in 1989 of the attempted waiver and questioned its validity then, that the court would have approved it. Findings of Fact # 12 through # 16 showed that many of his claimed child support expenditures were not those in fact. Based on the parties' testimony concerning their wavier agreement and Mr. Pluid's history of purported support payments, it is more likely that the real purpose of the waiver was to avoid paying the full amount of support, so his facing an arrears judgment only rights the wrong the parties attempted by their Partial Waiver of Child Support document. *Therefore, it is recommended* that the court deny any Civil Rule 60(b) relief from judgment.

---

6. Mr. Pluid's Motion for Relief of Judgment was filed within one year of the Feb. 23, 1993 entry of the nunc pro tunc Order of July 14, 1989, so although the focus is on what occurred in 1989, his motion is regarded as within the one year time limit for the purpose of dealing with Civil Rule 60(b)(1) and (3) issues.

■ Implicit in our acceptance of the master's rationale concerning Frank's Rule 60(b) motion is our legal conclusion that child support waivers are not valid or enforceable until and unless a court has reviewed and approved their substantive adequacy under Civil Rule 90.3. *See Nix v. Nix,* 855 P.2d 1332, 1334 (Alaska 1993); *Cox v. Cox,* 776 P.2d 1045 (Alaska 1989).

We first announced this rule in *Cox,* basing it on Civil Rule 90.3. *Id.* at 1047–48. We referred to our decision in *Malekos v. Yin,* 655 P.2d 728 (Alaska 1982), which held that parties could by agreement waive court ordered child support, and indicated that the rule of accepting waivers by agreement was no longer valid in light of the adoption of Civil Rule 90.3: "We therefore conclude that the decision in *Malekos* has been superseded by Rule 90.3." *Cox,* 776 P.2d at 1048.

■ Civil Rule 90.3 was adopted effective August 1, 1987. If *Cox* applies retroactively as well as prospectively, the parties' waiver agreement was never effective. Normally court decisions are given retroactive as well as prospective effect so that they "will be binding in all subsequent cases in which the point in question is properly raised, regardless of the fact that the events to which the law is applied occurred prior to the actual decision of the Court." *Plumley v. Hale,* 594 P.2d 497, 502 (Alaska 1979). Occasionally, however, a judicial ruling should be applied only prospectively. We have identified four conditions which can point to the propriety of non-retroactive treatment in civil cases. They are:

(1) the holding is one of first impression, or overrules prior law, and was not foreshadowed in earlier decisions;

(2) there has been justifiable reliance on an alternative interpretation of the law;

(3) undue hardship would result from retroactive application; and

(4) the purpose and intended effect of the holding is best accomplished by prospective application.

*Id.* at 503.

The first factor points in both directions. *Cox* was the first case to consider whether agreements providing for child support payments lower than those called for under Civil Rule 90.3 would be valid without prior court approval. Case law prior to the adoption of Civil Rule 90.3 held that such agreements were valid. *See Malekos,* 655 P.2d 728. *Cox* was thus a case of first impression and, in a sense, it overruled prior law. However, the result in *Cox* was foreshadowed by the adoption of Civil Rule 90.3. Cases decided in other jurisdictions under federally mandated child support guidelines had concluded that agreements calling for lower support payments than provided for by guidelines did not, as such, justify deviation from the guidelines. *Peerenboom v. Peerenboom,* 147 Wis.2d 547, 433 N.W.2d 282, 285 (App.1988); *Ching v. Ching,* 7 Haw.App. 221, 751 P.2d 93, 96 (1988).

All of the other factors indicate that retroactive treatment should be given. The second factor, justifiable reliance on an alternative interpretation of law, did not exist at the time that the agreement was presented to the court. Our decision in *Cox* was handed down two weeks before the hearing in this

case. Any justifiable reliance on the partial waiver agreement terminated with the *Cox* decision. The same is true for the undue hardship factor.

Concerning the fourth factor, the purpose and intended effect of the ruling, this factor also suggests that retroactive treatment is appropriate. The purpose of Civil Rule 90.3 is to ensure that child support be set at an adequate level in recognition that "many parents underestimate actual child support costs." *Cox*, 776 P.2d at 1048. That purpose can be best accomplished by giving broad application to the *Cox* ruling.

In consideration of these factors we conclude that *Cox* should be applied retroactively to the date of enactment of Civil Rule 90.3.

Based on the foregoing, the orders of the superior court dated October 17, 1994, and February 22, 1995, are REVERSED and this case is REMANDED with directions to enter (1) an order denying the Civil Rule 60(b) motion for relief from judgment, and (2) a judgment for arrearages in accordance with the recommendation of the master.