Janay WOLFF, Appellant,

v.

**Ralph CUNNINGHAM, individually and d/b/a Igloo Ice, Appellee.**

No. S–12263.

Supreme Court of Alaska.

July 11, 2008.

Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellant.

William D. Artus, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

1. *See infra* note 10.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

In 2002 Janay Wolff, Ralph Cunningham, and Ronnie Clanton agreed that a $25,000 payment from Cunningham to Wolff would settle a business debt between Cunningham and Clanton, remove a Child Support Enforcement Division lien from Cunningham's real property in Soldotna, and satisfy Clanton's child support obligation. When Cunningham failed to pay, Wolff filed suit to enforce the agreement.

The superior court dismissed Wolff's complaint because it held that enforcing the agreement would modify Clanton's child support obligations in violation of Alaska Civil Rule 90.3 and public policy. Because Clanton's child support obligation is distinct from Cunningham's obligation to pay Wolff, we reverse the judgment of dismissal and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Janay Wolff and Ronnie Clanton are the parents of a child born in June 1978. Wolff and Clanton divorced in 1980 and Clanton was ordered to pay Wolff child support of $200 per month. Clanton failed to stay current with his support payments, and by late August 1991 his arrearages totaled $15,504.59. In August 1991 the Alaska Child Support Enforcement Division (CSED) asserted a lien against Clanton's real and personal property in an effort to recover the child support arrearages.

Ralph Cunningham is Wolff's brother and Clanton's former business partner. Cunningham and Clanton operated Igloo Ice Inc., an ice-making business in Soldotna, as a partnership until August 1992. CSED's lien covered Clanton's interest in Igloo Ice. On August 27, 1992 Clanton "signed a Waiver of Claim whereby he waived all claims he might have to any of the real property, personal property, stocks or any other interest in any assets of IGLOO ICE, INC." Also on August 27, 1992 Clanton and Cunningham signed an agreement not to compete that prohibited Clanton from competing against Cunningham and Igloo Ice.[1] Clanton agreed not to com-

pete against Cunningham and Igloo Ice in exchange for Cunningham's promise to pay CSED $15,504.59 plus interest on or before February 1, 1993, to satisfy CSED's August 1991 child support lien. Cunningham did not pay CSED per this agreement and CSED did not remove the lien from Clanton's property.

In June 1995 Clanton and Wolff sued Cunningham for breach of the non-competition agreement. Before trial on this suit was to begin, Clanton, Wolff, and Cunningham settled. Their settlement agreement was not filed with the court. Cunningham did not pay in accordance with the settlement agreement.

In 2002 Cunningham, Clanton, and Wolff signed a new agreement, titled "Promissory Note." The 2002 promissory note states:

> As per agreement I, Ralph E. Cunningham, agree to pay Janay B. [Wolff] twenty five thousand ($25,000) dollars by the 31st of October 2002. Payments or portions can be made before then and will be subtracted from any balance owing at that time. When the balance has been paid, all obligations from me to Ronnie R. Clanton will have been met, and Ronnie R. Clanton's child support obligations to Janay B. [Wolff] will also have been met. Any liens, encumbrances, or judgments involving myself or my properties will be dismissed, considered paid in full, and all conditions met. If problems should arise with the release of any of the liens, encumbrances, or judgments involving myself or my properties, Ronnie R. Clanton and Janay B. [Wolff] will make reasonable effort to facilitate that release.

Cunningham did not pay Wolff the $25,000 as promised in this document. Although titled a "promissory note," the 2002 agreement contains mutual promises and was signed by all three parties. Even though we refer to this document as the "promissory note," it was a contract.

In September 2004 Wolff sued Cunningham in the superior court in Anchorage to enforce the 2002 promissory note.[2] Wolff's complaint sought damages for emotional distress, back child support, and attorney's fees, and asked the court to foreclose on the Igloo Ice property "to satisfy the child support obligation."[3] Cunningham responded, raised affirmative defenses, and moved for a change of venue to Kenai. The court ordered the case transferred to the superior court in Kenai.

Following transfer, Cunningham moved to dismiss Wolff's emotional distress claim; to dismiss Wolff's entire claim as barred by res judicata; and to quash CSED's lien on the Soldotna property. Cunningham's motion to quash CSED's lien argued that the lien had expired. Wolff filed a motion for partial summary judgment on the issue of Cunningham's liability under the promissory note; she also conceded that dismissal of her emotional distress claim was appropriate because it was unsupported by Alaska law.

In May 2005 the court issued a memorandum decision and order that dismissed Wolff's complaint in its entirety. The court held that res judicata did not apply to Wolff's claims; that CSED's lien on the Soldotna property was still valid; that Wolff's emotional distress claim was, as Wolff acknowledged, appropriately dismissed given prevailing Alaska law; and that the promissory note was unenforceable "due to lack of mutuality of obligation and consideration."

In May 2005 Wolff moved for partial reconsideration of the ruling that the promissory note is unenforceable because it lacks consideration and mutuality of obligation. The court granted the reconsideration motion and asked both parties for additional briefing on contract law. After receiving the supple-

---

**2.** Wolff's complaint named Cunningham, individually and doing business as Igloo Ice, and John Does I–X (unknown parties with a possible interest in Igloo Ice's property) as defendants. Ronnie Clanton is not a named party. The record is silent on whether Clanton has knowledge of this action.

**3.** Wolff renews her foreclosure request on appeal: "The judgment of the trial court should be reversed, and ... the property involved in this action [should] be ordered foreclosed and sold to pay all or part of [the $25,000 plus interest]." Because we reverse the judgment and remand for further proceedings, we do not need to consider her foreclosure request.

mental briefing, the court affirmed its May 2005 order dismissing Wolff's complaint. The court based its reconsidered decision on Alaska Civil Rule 90.3 and public policy grounds rather than on contract law.

Because the court interpreted the promissory note as an agreement "to waive Mr. Clanton's past and future child support obligations," it held that the promissory note could not be enforced without prior judicial approval and that entering into "agreements for the purpose of avoiding child support obligations" is a violation of public policy. In August 2005, after the court dismissed Wolff's complaint, Wolff filed motions for reconsideration and for judicial approval of the promissory note. The court did not respond to either motion. Per Alaska Civil Rule 77(k)(4), the reconsideration motion was deemed denied.[4] The superior court entered final judgment in February 2006.

Wolff appeals.

## III. DISCUSSION

### A. Standard of Review

■■■ The superior court dismissed Wolff's complaint because it held that enforcement of the promissory note would modify Clanton's child support obligations in violation of Civil Rule 90.3 [5] and public policy. We review the grant or denial of a motion to dismiss de novo.[6] The superior court's interpretation of the civil rules presents a question of law that we review de novo.[7] We also review the superior court's interpretation of the promissory note de novo.[8]

### B. Neither Civil Rule 90.3 nor the Public Policy Behind Civil Rule 90.3 Bars Wolff's Enforcement of the Promissory Note Against Cunningham.

Wolff argues that it was error to dismiss her complaint because the promissory note does not modify Clanton's child support obligations or violate public policy. Cunningham argues in response that "the promissory note is void because it lacks mutual consideration, runs contrary to the relevant case law and statu[t]es, and allows Clanton ... to avoid paying child support." Because Cunningham's performance does not alter Clanton's child support obligations or violate public policy, we hold that Civil Rule 90.3 does not bar either Cunningham or Wolff from enforcing the promissory note.

■■■ **Civil Rule 90.3.** Cunningham's argument—that enforcement of the promissory note will modify Clanton's child support in violation of Civil Rule 90.3—is unavailing because it does not correctly interpret the parties' reasonable contractual expectations and because it misconceives Cunningham's promised $25,000 payment to Wolff as a child support payment. We interpret contracts to give effect to the parties' reasonable expectations and attempt to give effect to all of the contract's terms, if possible.[9]

---

4. Alaska R. Civ. P. 77(k)(4) ("If the motion for reconsideration has not been ruled upon by the court within 30 days from the date of the filing ... the motion shall be taken as denied."); *cf. Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1262 (Alaska 2007) (stating "a moving party forfeits the right to appeal an issue raised in a motion left unresolved by the trial court unless the party called the motion to the trial court's attention and insisted on a ruling before the court entered final judgment").

5. Alaska R. Civ. P. 90.3(h) (modification of child support awards); *see Nix v. Nix*, 855 P.2d 1332, 1334 (Alaska 1993) (stating parental agreements waiving child support are invalid until they receive judicial approval under Civil Rule 90.3).

6. *McElroy v. Kennedy*, 74 P.3d 903, 906 (Alaska 2003).

7. *Miller v. Clough*, 165 P.3d 594, 599 n. 8 (Alaska 2007) (*citing Fuller v. City of Homer*, 113 P.3d 659, 662 (Alaska 2005)).

8. *See Dunlap v. Dunlap*, 131 P.3d 471, 474 (Alaska 2006) ("We review a superior court's interpretation of a child support agreement as we would review the interpretation of any contract, *de novo.*") (citing *Gaston v. Gaston*, 954 P.2d 572, 574 (Alaska 1998)); *cf. Hixson v. Sarkesian*, 66 P.3d 753, 757 (Alaska 2003) ("The interpretation of an agreement between two parties is a question of law to which we apply our independent judgment.") (citing *Flannery v. Flannery*, 950 P.2d 126, 129 (Alaska 1997)).

9. *See Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 99 P.3d 553, 562 (Alaska 2004).

Cunningham has three identifiable expectations under the terms of the promissory note. He can expect that a $25,000 payment to Wolff will settle his business debt with Clanton; that Clanton will not become a competitor of Igloo Ice; and that he will receive Clanton's interest in Igloo Ice.[10] The promissory note also gives Cunningham a reasonable expectation that his performance will reduce, and thus potentially discharge, the CSED lien up to the amount of his payment. Because neither Wolff nor Clanton promised more than their reasonable efforts to remove the CSED lien and because Cunningham could not know in advance whether the $25,000 payment would fully discharge the lien, Cunningham can only expect a dollar-for-dollar reduction to the amount of the lien.

Cunningham's identifiable promissory note expectations—including the expectation of a dollar-for-dollar reduction of the CSED lien—do not waive or modify Clanton's child support obligations. Cunningham's $25,000 payment to Wolff does not alter Clanton's child support obligations because Cunningham's expectations can be fulfilled regardless of the status of Clanton's arrearages; the $25,000 payment will secure Cunningham's benefit of the bargain whether or not Clanton's support obligation continues. Civil Rule 90.3 therefore does not apply to the terms of the promissory note that require Cunningham to pay $25,000 to Wolff.

■■■■ **Public Policy.** The superior court held that the promissory note is "an agreement to waive Mr. Clanton's past and future child support obligations" and that "it is a violation of public policy to enter into such agreements for the purpose of avoiding child support obligations." An agreement that would excuse an obligor from his or her child support obligation would, without court approval, violate public policy.[11] But, because we do not interpret the agreement between Wolff and Cunningham to be an agreement to waive Clanton's child support obligations, we hold that public policy does not prohibit Cunningham or Wolff from performing and enforcing their obligations under the promissory note.[12]

Enforcing the clause stating "[w]hen the [$25,000] has been paid, all obligations from [Cunningham] to Ronnie R. Clanton will have been met, and Ronnie R. Clanton's child support obligations to Janay B. Wolf[f] will also have been met" does not violate public policy when the clause is applied to *Cunningham's* obligations. Because public policy can be applied to this clause in a way that limits the effect of the clause without prejudice to Cunningham, Cunningham cannot escape

---

**10.** Cunningham's expectations under the promissory note are likely similar to his expectations under the August 27, 1992 "Agreement Not To Compete." In relevant part the August 1992 agreement states:

> THIS AGREEMENT made this 27th day of August, 1992, by and between RONNIE CLANTON ... hereinafter referred to as "CLANTON", and RALPH CUNNINGHAM and IGLOO ICE INC., ... hereinafter referred to as "CUNNINGHAM/IGLOO".
>
> WHEREAS, CLANTON and CUNNINGHAM/IGLOO wish to enter into a Non-competition Agreement in consideration of the sum of ... ($15,504.59). CUNNINGHAM/IGLOO shall pay said sum plus any accrued interest to the State of Alaska, Child Support Enforcement Division on or before February 1, 1993, in payment of that certain Assertion of Lien for Child Support ... recorded on August 23, 1991.... CUNNINGHAM/IGLOO acknowledges that failure to pay the sum set forth above shall constitute a breach of this agreement and as a result this agreement shall be deemed null and void.

> NOW THEREFORE, in consideration of the premises, the covenants made herein, the acts performed and to be performed by the parties hereto, the parties have agreed and by these presents do agree to the following non-competition agreement.

The appellate record contains only two pages of the five-page 1992 non-competition agreement. It appears that this agreement, if fully performed, would have precluded Clanton from competing against Cunningham and would have given Cunningham ownership of Igloo Ice unencumbered by CSED's lien. In August 1992 Clanton also signed a "Waiver of Claim" that waived "all claims he might have to any of the real property, personal property, stocks or any other interest in any assets of IGLOO ICE, INC."

**11.** Contracts that waive child support obligations are unenforceable until they receive judicial approval. *Nix*, 855 P.2d at 1334 (discussing *Cox v. Cox*, 776 P.2d 1045, 1048 (Alaska 1989)).

**12.** See *Matanuska Elec. Ass'n*, 99 P.3d at 562.

performance.[13] In other words, even if this clause were unenforceable by Clanton absent prior judicial approval, the value of the bargain to Cunningham does not turn on the existence of the child support obligation portion of the clause.

Furthermore, Cunningham appears to have had an adequate commercial interest in making the $25,000 payment given his desire to obtain Igloo Ice free and clear of CSED's lien. And given that Wolff and Clanton promised to make "reasonable efforts" to remove the CSED lien, potentially including, as Wolff argues, Clanton's obligation to make reasonable efforts to pay any remaining arrearages necessary to discharge the lien, Cunningham's payment cannot be interpreted as a modification of Clanton's child support obligation.

Because Cunningham's obligations under the promissory note do not alter Clanton's child support obligation, it was error to dismiss Wolff's complaint based on Civil Rule 90.3 and the public policy behind Civil Rule 90.3.

### C. We Do Not Reach the Parties' Other Arguments.

Wolff argues that the promissory note is enforceable as either a third-party beneficiary contract or as a promissory note (negotiable instrument) under AS 45.03.104(a).[14] Cunningham concedes that "there is no question that the parties signed a promissory note with all of the requisite bells and whistles." Because enforcement of the promissory note does not depend on its legal definition, we decline to classify the promissory note as either a third-party beneficiary contract or as a promissory note (negotiable instrument).

The parties raise numerous other arguments. But, because the dismissal of Wolff's complaint was founded on a narrow issue of public policy and because we reverse the judgment of dismissal and remand for further proceedings, we do not need to address these other arguments. Legal and factual disputes may arise on remand and nothing in our decision today is meant to restrict the superior court's consideration of those issues or disputes.[15]

### IV. CONCLUSION

Because neither Civil Rule 90.3 nor the public policy behind Civil Rule 90.3 bars Wolff's enforcement of the promissory note against Cunningham, we REVERSE the judgment of dismissal and REMAND for further proceedings.

MATTHEWS, Justice, dissenting.

MATTHEWS, Justice, dissenting.

Today's opinion concludes that Cunningham did not have an expectation that upon payment of the note the amount underlying the lien on his property would be considered paid in full and the lien discharged. I disagree. The third and fourth sentences of the promissory note state that

[w]hen the balance has been paid, all obligations from me to Ronnie R. Clanton will have been met, and Ronnie R. Clanton's child support obligations to Janay B. Wolff will also have been met. Any liens, en-

---

13. Cunningham argues that *Evans v. Jeff D.* prohibits enforcement of the promissory note because the context of the note cannot be separated from its contents, which violate public policy. 475 U.S. 717, 727, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 184 cmt. a (1981)). *Evans* is not applicable in this case because it involved an interpretation of Federal Rule of Civil Procedure 23(e), and a federal statute, The Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988, not the state rule, Alaska Civil Rule 90.3, that we construe here. *Evans*, 475 U.S. at 727, 106 S.Ct. 1531.

14. AS 45.03.104 ("negotiable instruments" definition).

15. At oral argument on appeal Wolff's attorney stated that it would be appropriate for this court to approve the promissory note as an agreement regarding support, presumably per AS 25.27.065 and *Nix*, 855 P.2d at 1334. Considering that the child was over eighteen when the promissory note was signed and considering that the difference between the amount necessary to discharge the lien and the amount owed under the promissory note may now be relatively small, the superior court, in its discretion, might determine on remand that approval of the promissory note satisfies AS 25.27.065, *Nix*, and public policy. See *Nix*, 855 P.2d at 1334.

cumbrances, or judgments involving myself or my properties will be dismissed, considered paid in full, and all conditions met. The court reads the promissory note as giving Cunningham a "reasonable expectation that his performance will reduce, and thus potentially discharge, the CSED lien up to the amount of his payment."[1] But this understates the plain meaning of the note. It says that when the balance ($25,000) has been paid then Clanton's child support obligations to Wolff "will ... have been met" and "*[a]ny liens ... will be dismissed [and] considered paid in full.*" (Emphasis added.) The note clearly contemplates that the payment of the $25,000 would fully discharge (and not just reduce or "potentially discharge") the CSED lien.[2]

In my view, the superior court was correct in considering the promissory note as an agreement regarding child support and therefore "not valid until it receives judicial scrutiny under Rule 90.3."[3] In my opinion, what the superior court should have done upon making this observation was review the note and consider whether it should be approved.[4] If the superior court had taken this step as of the time of its initial ruling on May 4, 2005, the record indicates that it would have found that the amount necessary to discharge the lien was a little less than the amount of the note plus interest.[5] Thus there would have been no reason not to approve the note as an agreement regarding support. Although we do not know how the account currently stands, it seems at least reasonably possible that even now approval and enforcement of the note would be appropriate and would not retroactively modify child support arrearages.

Based on this rationale, I think the judgment of the superior court should be reversed with directions to the court to consider approving the note as an agreement regarding support.[6]

---

1. Op. at ——.

2. The court relies on the fifth sentence of the promissory note which promises "reasonable effort" to facilitate the release of any of the liens as proof that Cunningham could not have expected that the $25,000 would fully discharge the lien. Op. at ——; Op. at ——. But this sentence seems best read as a promise on behalf of Clanton and Wolff to help out in obtaining a lien release, not as a statement that Cunningham must pay the amount of the note even if the payment would not result in the state's lien being released. Under this reading, the third, fourth, and fifth sentences in the note are reconcilable rather than conflicting.

3. *Nix v. Nix*, 855 P.2d 1332, 1334 (Alaska 1993) (discussing *Cox v. Cox*, 776 P.2d 1045 (Alaska 1989)).

4. Instead, the superior court simply concluded that the agreement was not enforceable because it was "never presented to the court for approval." A few days after the court made this ruling Wolff moved for approval of the note as an agreement related to child support. She contended that the note with interest would when paid fully discharge arrearages. The court made no ruling on this motion.

5. *See* Child Support State of Account as of April 30, 2005. Despite the fact that the note is silent on the subject of interest, Cunningham appears to have admitted that the note bears interest. Thus when asked by the superior court about "liability for excess accounts due," Cunningham answered: "Defendant admits that the promissory note states 'plus interest,' however denies the note is collectable by Janay Wolff in this case."

6. Could the court on remand approve the note if doing so would forgive a part of the outstanding arrearages? Civil Rule 90.3(h)(2), which prohibits the retroactive modification of child support arrearages, would seem to bar any such action. On the other hand, one may question whether a slight discount in arrearages should necessarily stand in the way of obtaining substantial satisfaction, given the age of the arrearages—the child reached the age of majority in 1996—and the difficulties encountered in collecting them. It is often a foolish policy to reject a very good result in pursuit of a perfect one. It may be that the case would be seen as sufficiently compelling that the prohibition on retroactive modification could be relaxed under Civil Rule 94. In any event, this issue is only a hypothetical possibility at this point because payment of the note plus interest might fully satisfy the outstanding arrearages.