229 P.3d 1002 (2010)
Karen LAUGHLIN, Appellant,
v.
Brian LAUGHLIN, Appellee.
No. S-13313.
Supreme Court of Alaska.
April 30, 2010.
*1003 Robert C. Erwin, Robert C. Erwin, LLC, Anchorage, for Appellant.
Appellee not participating.
Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

OPINION
CHRISTEN, Justice.

I. INTRODUCTION
Karen and Brian Laughlin divorced in October 2008. Before trial, the parties agreed to establish a "children's fund" from which they would pay certain children's expenses in lieu of child support. The superior court conducted a bench trial on the issues the parties were unable to resolve and incorporated the children's fund agreement into its final order. Karen appeals restrictions the court placed on the use of the children's fund. She also appeals the superior court's allocation of dependent tax credits and its determination of the reasonable rental value of the parties' marital residence. We reverse the superior court's decision to approve the creation of the children's fund in lieu of child support and remand for calculation of child support consistent with Alaska Rule of Civil Procedure 90.3. Because the agreement to establish a children's fund was the basis for the superior court's decision to allocate a dependent tax deduction to Brian, we also vacate that decision. We affirm the superior court's determination of the reasonable rental value of the parties' marital residence.

II. FACTS AND PROCEEDINGS
Karen and Brian Laughlin were married in Palmer, Alaska in 1982 and have four children. Brian filed a complaint for divorce in 2005.
Karen and Brian reached settlement on most issues prior to trial, including child custody, child support, and a majority of the disputes over property distribution. Superior Court Judge Vanessa White read the parties' partial settlement agreements into the record on April 23, 2007 and June 8, 2007. In lieu of monthly child support payments, the parties agreed to set up a bank account (the "children's fund") to pay some of the children's expenses. The children's fund was set up to cover specified expenses only, including uncovered medical expenses, school activity fees, and the parties' life insurance premiums. To establish the fund, the parties agreed that Karen would contribute approximately $19,000 from her Morgan Stanley account and that they would jointly contribute approximately $12,000 from a joint Scudder money market account. The parties also agreed that Brian would not make ongoing child support payments to Karen, and that Karen's $12,000 child support arrearage *1004 would be forgiven. In addition to the expenses covered by the children's fund, both parents agreed to be responsible for the children's discretionary expenses incurred during the time each had physical custody. Karen had physical custody 70% of the time; Brian had physical custody 30% of the time.
The superior court addressed the remaining disputes over custody, property, and tax considerations at trial, and issued findings of fact and conclusions of law on May 29, 2008. The court incorporated the parties' partial settlement agreements into its final order. Both parties moved for reconsideration and the court issued an order on September 24, 2008 adopting some of the suggestions from both parties.[1] A divorce decree was entered on September 11, 2008, although its effective date was December 11, 2007.
On appeal, Karen argues that the superior court erred by: (1) restricting the use of the children's fund; (2) not considering appropriate tax implications resulting from the transfer of assets to the children's fund and the division of shares that were marital property; (3) granting a dependent tax deduction to Brian, who had custody only 30% of the time; and (4) setting the rental value of the marital home at $1,000 per month. Brian filed a notice of non-participation in the appeal.

III. STANDARD OF REVIEW
Superior courts have "broad discretion in determining child custody issues"[2] and in "fashioning a property division in a divorce action."[3] We use our "independent judgment when reviewing the legal interpretation of property settlements and child custody agreements that are incorporated into divorce decrees. But when the trial court looks to extrinsic evidence to interpret an agreement, we review its factual determinations under the clearly erroneous standard and will reverse only if the facts do not support the trial court's interpretation."[4] "Child support awards are reviewed for abuse of discretion and will not be set aside unless a review of the record as a whole leaves us with a definite and firm conviction that a mistake has been made."[5]
"The valuation of available property is a factual determination that should be reversed only if clearly erroneous."[6]

IV. DISCUSSION

A. The Children's Fund Is Invalid Under Rule 90.3.
Karen argues on appeal that it was an abuse of discretion for the superior court to restrict the use of the children's fund. She does not question whether the children's fund itself is permissible under Rule 90.3.[7] But in Cox v. Cox we held that "[p]arents may not make a child support agreement which is not subject to [Rule 90.3]."[8] We observed that "the guidelines [in Rule 90.3] reflect a paternalistic view toward child support agreements which conflicts with the freedom of contract"[9] and we concluded that "[t]he presumption imposed by [Rule 90.3] is that the guidelines are applicable and may be departed *1005 from only for good cause."[10] In Nix v. Nix we reiterated that "a court may deviate from the Rule 90.3 child support schedule only upon `good cause'" and clarified that "a court is `not required to find that good cause existed merely because the parties had reached an agreement.'"[11]Nix reaffirmed that "no parental agreement regarding child support is valid until it receives judicial scrutiny under Rule 90.3."[12] Given this case law, we must address whether the agreement to create a children's fund in lieu of child support is permissible before considering Karen's argument that the court should have allowed broader use of the fund.
The permissibility of the children's fund was discussed at length at oral argument before our court. After the argument, we issued an order inviting both parties to address "whether their agreement is permissible under Civil Rule 90.3 and this court's precedent including Cox v. Cox and its progeny." Only Karen responded to the order.
We review matters that were not raised below and not listed in a statement of points on appeal for plain error.[13] Plain error exists where "an obvious mistake has been made which creates a high likelihood that injustice has resulted."[14]
Rule 90.3(c) states that a superior court "may vary the child support award as calculated under the other provisions of this rule for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied." The superior court "must specify in writing the reason for the variation, the amount of support which would have been required but for the variation, and the estimated value of any property conveyed instead of support."[15] Rule 90.3(c) explains that the good cause requirement "may include a finding that unusual circumstances exist which require variation of the award in order to award an amount of support which is just and proper for the parties to contribute toward the nurture and education of their children."
The superior court partially addressed the requirements of Rule 90.3(c) when it approved the parties' agreement to create the children's fund. After hearing the contours of the proposed children's fund, the court asked the parties if they were "suggesting to the court that there are extraordinary circumstances here that justify a zero child support obligation," to which counsel for both parties responded, "yes." After the settlement agreement was read into the record, the court stated:
The parties agree that there are extraordinary circumstances in this case in that, number 1, at the present time mom is earning at a higher rate than dad, and she is the primary custodian. Second, the parties haveeach have substantial separate estates. And finally, the parties' marital estate is fairly substantial. And all of these circumstances together, the parties stipulate and agree, create extraordinary circumstances which justify deviating from Alaska Rule of Civil Procedure 90.3. And they both believe that manifest injustice would occur if a standard 90.3 child support calculation were accomplished. The parties agree that by momby forgiving the existing arrearages that mom owes based on prior orders [in the amount of approximately $12,000], and taking into account all of these other circumstances, that the children's needs are best going to be met by the arrangement they have made whereby henceforth, meaning beginning May 1, neither party will owe child support to the other.
The court also stated:
I find that there are extraordinary circumstances that justify deviating from Alaska Rule of Civil Procedure 90.3, and that manifest injustice would occur if the parties *1006 were required to calculate child support pursuant to 90.3, and therefore the agreement that they have as to the expungement of the arrears and that neither party will pay child support going forward adequately meets all of the children's financial needs.
The court's written findings of fact and conclusions of law include the court's finding that:
. . . requiring a rote child support obligation, in addition to the financial arrangements the parties[] agreed upon, is both unnecessary and likely to result in manifest injustice. Because the parties have made alternative arrangements for child support, no final child support order shall issue in this matter.
Based upon these statements and a full examination of the record, it is clear that the agreement to establish a children's fund in lieu of child support does not meet the requirements of Rule 90.3 or our case law. Most prominently, the record does not include a written calculation of "the amount of support which would have been required but for the variation,"[16] as required by the rule. In the absence of such a calculation, the superior court's approval of the children's fund in lieu of child support constitutes plain error. The order approving the children's fund must be reversed for this reason.
A second problem with the parties' agreement is the absence of "good cause" to vary the application of Rule 90.3. As Rule 90.3(c) explains, "good cause" may include "unusual circumstances" which justify varying the award, but parties must prove "by clear and convincing evidence that manifest injustice would result if the support award were not varied." Children have an interest in adequate support independent of either parent's interest, and it is in this light that trial courts should consider whether the facts of a case warrant a finding of "unusual circumstances."
The superior court identified the "extraordinary circumstances that justify deviating from Alaska Rule of Civil Procedure 90.3" as: (1) the mother has a higher income than the father and is the primary caretaker;[17] (2) the parties each have substantial separate estates; (3) the parties have a substantial marital estate; and (4) the father is willing to forgive the mother's child support arrearage in consideration of the agreement to establish a children's fund in lieu of child support. It is not unusual for one spouse to have a greater income than the other. Nor is the fact that each parent has independent assets extraordinary. And while the Laughlins' separate and marital assets are not insubstantial, neither are they unusually large. A child support arrearage, even one of approximately $12,000, is not unusual nor is it a reason to deviate from the rule. In short, none of the "extraordinary circumstances" of this case, viewed independently or together, support the finding that "manifest injustice" would result if the Rule 90.3 guidelines were followed.
We reverse the superior court's decision permitting Karen and Brian to establish a children's fund in lieu of child support and remand for calculation of child support consistent with Rule 90.3. On remand, the superior court should conduct further proceedings as necessary to ensure that each party receives credit for all payments made to the children's fund.[18]

B. We Do Not Decide Whether the Superior Court Erred in Permitting Brian to Claim a Dependent Tax Deduction.
Karen argues that the superior court violated Rule 90.3(k) by permitting Brian, who *1007 has custody of the children 30% of the time, to claim a dependent tax deduction. The superior court concluded that "the parties' special financial arrangement for the children's support justifies allowing each parent to receive some of the tax benefit associated with claiming one or more of the qualifying children as his or her dependent." Because we reverse the decision to adopt the children's fund agreementwhich was the basis for the superior court's allocation of dependent tax deductionswe must also vacate the allocation of these tax deductions and remand for reconsideration of this issue.

C. The Superior Court Did Not Err in Setting the Reasonable Rental Value of the Marital Home at $1,000 Per Month.
Brian received a pre-trial benefit by having exclusive use of the marital residence with no mortgage obligation. Karen argues that the superior court's determination of the reasonable rental value of the marital residence was clearly erroneous.
At trial, Karen introduced an appraisal which estimated the rental value of the property to be $1,700-$2,700 per month "if it's fixed up." Brian estimated that given the poor condition of the house, the rental value was less than $500 per month. The superior court considered this evidence and determined that the reasonable rental value of the residence during separation was $1,000 per month. Karen argues that this determination was "simply unsupported by the evidence." We disagree.
The rental appraisal provided by Karen included the substantial caveat that it was "BASED ON A [HYPOTHETICAL] CONDITION THAT THE SUBJECT IS IN LIVABLE, MARKETABLE AND [RENTABLE] CONDITION, WHICH IS NOT THE CASE AT THIS TIME." The superior court acknowledged this caveat when it found that the facts adduced at trial established "that this home could not be marketed for rent at an amount close to its reasonable rental value if it were in good condition." While recognizing that the "residence sits on a large parcel of land, and has many other attractive features," the superior court found that "its state of disrepair and the deferred maintenance would make it an unattractive prospect for any prospective tenant." The court also found that at the time of separation "[s]ignificant repairs, such as replacement of a window, were needed." The superior court's finding regarding the rental value of the marital residence is well supported by the evidence; it is not clearly erroneous.[19]

V. CONCLUSION
We REVERSE the superior court's decision permitting Karen and Brian to establish a children's fund in lieu of child support and REMAND for the superior court to calculate and award child support consistent with Rule 90.3. On remand, the superior court should also conduct further proceedings as necessary to give each party credit for the contributions made to the children's fund.
We VACATE the superior court's decision regarding allocation of the dependent tax deductions and REMAND for further proceedings consistent with this opinion.
We AFFIRM the superior court's valuation of the reasonable rental value of the parties' marital residence.
EASTAUGH, Justice, not participating.
NOTES
[1] The superior court did not permit Karen to deduct the taxes that resulted from the transfer of her Morgan Stanley account to the children's fund, did permit Brian to deduct the taxes that accrued from transferring the Scudder account to the children's fund, amended its decision to state that the children's income tax obligations would be paid out of their annual Permanent Fund Dividends rather than out of the children's fund, did not accept Karen's request to eliminate the requirement that the parents agree on written criteria for periodic accounting of the children's fund, and agreed that Karen's payment to Brian for his share of their CompuShare account should be reduced by the tax obligations associated with the distribution.
[2] Barrett v. Alguire, 35 P.3d 1, 5 (Alaska 2001).
[3] Cox v. Cox, 882 P.2d 909, 913 (Alaska 1994).
[4] Brown v. Brown, 983 P.2d 1264, 1267 (Alaska 1999) (citations omitted).
[5] Harvey v. Cook, 172 P.3d 794, 797 (Alaska 2007) (citations omitted).
[6] Cox, 882 P.2d at 913-14.
[7] At oral argument before our court, Karen's counsel clarified that Karen does not challenge the validity of the children's fund agreement.
[8] 776 P.2d 1045, 1048 (1989).
[9] Id. at 1048.
[10] Id. at 1049.
[11] 855 P.2d 1332, 1333 (Alaska 1993) (quoting Cox, 776 P.2d at 1049).
[12] Id. at 1334.
[13] In re Estate of Fields, 219 P.3d 995, 1011 (Alaska 2009).
[14] Id. (quoting Miller v. Sears, 636 P.2d 1183, 1189 (Alaska 1981)).
[15] Alaska R. Civ. P. 90.3(c).
[16] Alaska R. Civ. P. 90.3(c)(1). At oral argument, when asked whether child support had been calculated according to Rule 90.3, Karen's counsel responded, "It has not been computed anywhere I could find."
[17] At the time of trial, Karen was employed at the Mat-Su Regional Medical Center and her 2006 gross wage income was $67,178. Brian was employed as a bus driver for Laidlaw and his 2006 gross wage income was $32,294.
[18] Because we reverse the superior court's decision relating to the children's fund, we do not address Karen's appeal of the restrictions placed on the use of the fund or her appeal of the tax considerations the superior court took into account when establishing the fund.
[19] We do not address Karen's appeal of the superior court's refusal to credit her in the distribution of marital property for her appraisal costs because this argument is absent from her points on appeal. See, e.g., Wetzler v. Wetzler, 570 P.2d 741, 742 n. 2 (Alaska 1977) ("[W]e will not treat issues that were argued in the brief but not set forth in the Points [on Appeal].").