*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| GAYLE BJORN-ROLI, PER ERIK BJORN-ROLI, MAIKEN ERICKSON, and KJERSTI WALKER, | ) ) ) ) | Supreme Court Nos. S-16607/16897 (Consolidated) |
| Appellants, | ) ) | Superior Court No. 3AN-14-04427 CI |
| v. | ) ) | O P I N I O N |
| PATRICIA MULLIGAN, | ) ) | No. 7336 – February 15, 2019 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Brett von Gemmingen, Law Offices of Brett von Gemmingen, LLC, Anchorage, for Appellants. James M. Gorski, Hughes White Colbo Wilcox & Tervooren, LLC, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

WINFREE, Justice.

## I.       INTRODUCTION

Two sisters were beneficiaries of their late parents' trusts. One sister was trustee of the trusts and president of the family corporation. The other sister, a shareholder of the family corporation, disputed proposed trust distributions and various

aspects of the family corporation; she and her children sued the trustee for breach of fiduciary duty in both trustee and corporate capacities. The litigation resulted in two appeals, which we consolidated for oral argument and decision.

We largely affirm the superior court's decisions because they were discretionary and, under the applicable standard of review, we cannot say they were unreasonable given the court's factual findings; but we remand for reconsideration of certain trust property valuations, which may require minor distribution adjustments.

## II.    FACTS AND PROCEEDINGS

### A.    Background

#### 1.    The Rude family and estate plan

Kenneth O. (known as Olin) and Edna L. Rude had two daughters, Gayle Bjorn-Roli and Patricia Mulligan. Gayle has three children:  Per Erik Bjorn-Roli, Maiken Erickson, and Kjersti Walker. Patricia has two children:  Patrick Mulligan and Erin Barber.

Olin and Edna executed declarations of trust in 2000 (the KOR and ELR trusts). The trusts were nearly identical, providing that upon the first spouse's death, that spouse's assets would be split into new trusts:  a marital trust for the lifetime benefit of the surviving spouse and a family trust. Upon the second spouse's death, the trusts' assets would be reduced by specific gifts and the remaining assets distributed evenly between individual trusts for Gayle and Patricia.

The KOR and ELR trusts designated Olin and Edna as successor trustees for the other's trust, and Gayle and Patricia as successor trustees if the trustee predeceased the grantor-spouse or became incapacitated. Gayle and Patricia were to be successor trustees "for only as long as it takes to liquidate trust assets and divide and distribute the trust estate"; Gayle and Patricia each would be sole trustee of their individual trusts after distribution of the family trusts. The KOR and ELR trusts also

instructed that "all non-liquid trust assets be sold as soon as reasonably possible after Grantor's death" and that "there be no common ownership of assets between the trusts created for" Gayle and Patricia.

Olin and Edna amended their trusts a few days later. The amendments added property near Lake Louise as a specific gift to Patricia and allowed her to elect to take property at Bootlegger's Cove as part of her trust share. The amendments also made Patricia sole successor trustee of the KOR and ELR trusts upon the surviving spouse's death. The amendments further removed Gayle as trustee of her individual trust and substituted a bank. The amendments lastly made a trustee removable "only . . . in accordance with the provisions of the laws of the State of Alaska."

Olin amended the KOR trust a final time in 2007, a few months after Edna's death. The amendment made Patricia co-trustee of the KOR trust with Olin during his lifetime. The amendment also removed the provision instructing that all assets be liquidated, instead granting Patricia "full and sole authority and power to determine what assets of the trust are to be retained and what assets are to be sold."

### 2.    Rumac, Inc.

Olin and Edna were among Rumac, Inc.'s original shareholders. Rumac's principal asset is an ownership interest in land beneath an Anchorage hotel. The hotel leases the land and makes monthly payments to Rumac. Patricia was secretary and treasurer before Olin died; she then became president and Gayle became secretary.

After Olin's death some Rumac shares were distributed evenly between Patricia's and Gayle's families. Patricia also held some shares in trust for her and Gayle in the KOR and ELR trusts. Section 9.03 of the KOR and ELR trusts gave Patricia sole voting power over Rumac stock held in any trust created by Olin or Edna. This provision apparently was intended to prevent a voting deadlock between Gayle's and Patricia's families; a conflict between this provision and the KOR and ELR trusts'

appointments of the bank as the sole trustee of Gayle's individual trust would become apparent later.

### B. Facts

#### 1. Patricia's first proposed distribution

After Edna's and Olin's deaths, Patricia became sole trustee of the KOR and ELR trusts in 2010, responsible for distributing the remaining trust assets into two new trusts for her and Gayle. In March 2011 Patricia proposed distributing the trust assets — cash, investments, real property, notes receivable, and equal shares of Rumac stock. Each individual trust would receive nearly $1.7 million in addition to the money already distributed. Gayle would receive an investment property at Stuckagain Heights, half-owned by the Rudes, with her share valued at $250,000. Patricia would receive the Bootlegger's Cove property, to which she was given election rights in the KOR and ELR trusts, valued at $625,000. Patricia also would be assigned two creditor claims against her daughter Erin arising from loans Olin had made: the "Barber Note," a deed of trust note with a balance of about $170,000, and the "Barber car loan," a vehicle loan with a balance of $2,400.

Gayle objected to this proposed distribution. She contested the real estate valuations and suggested appraising the properties. Patricia responded that Gayle could obtain appraisals at her own expense but that Patricia preferred using real estate broker opinions of value because of appraisers' poor performance during the latest real estate bubble. Patricia refused to consider any appraisals not supported by historical sales figures from the previous two years. Patricia later rejected Gayle's suggestion that they sell the Stuckagain Heights property and split the proceeds, noting that keeping the trusts active until sale would incur unnecessary expense and be contrary to the Rudes' estate plan.

In June an appraiser Patricia hired said that an interested buyer would pay $95,000 for the remaining value of the Barber Note. Gayle obtained appraisals on the real property, valuing the Bootlegger's Cove property at $675,000 and the Stuckagain Heights property at $170,000. Patricia reiterated that appraisals were unreliable and that relying on them instead of real estate brokers would be a breach of her fiduciary duty. She kept the Bootlegger's Cove property at $625,000 and reduced the value of the Stuckagain Heights property to $225,000.

In December Gayle provided notice that she wanted Patricia to liquidate the Stuckagain Heights property and distribute the remaining assets immediately. Gayle stated that she thought distributing the property without a liquidation cost adjustment and at a value above its appraised value would be a breach of Patricia's fiduciary duties. Gayle did not want a distribution until the disagreement was settled.

Patricia accepted Gayle's terms "strictly for purposes of resolving this dispute" and to "bring this unhappy situation to an end and hopefully salvage some type of relationship with Gayle" and Gayle's children. Patricia explained that she would liquidate the non-liquid ELR trust assets, add liquidation costs to the properties, and adopt Gayle's appraisal values, changing the value of the Stuckagain Heights property from $225,000 to $170,000 and the Bootlegger's Cove property from $625,000 to $675,000.

### 2. Patricia's second proposed distribution and stock redemption

In January 2012 Patricia sent Gayle a second proposed distribution. Patricia interpreted Gayle's demand to liquidate the Stuckagain Heights property as a demand to liquidate all illiquid ELR trust assets, including the Rumac stock Gayle would receive. Patricia's proposed distribution included: redeeming the Rumac stock in Gayle's ELR trust for cash; adding to Gayle's trust a $35,000 promissory note from Gayle's daughter Maiken to Olin called the "Erickson Note"; combining the Barber Note

and Barber car loan values totaling $96,900; changing the Bootlegger's Cove and Stuckagain Heights property values to their appraised values; adding the properties' liquidation costs; and moving both properties into Patricia's trust. The changes would leave Gayle's trust with no relevant illiquid assets except for the Rumac stock from the KOR trust and the Erickson Note. Patricia's equalization payment to Gayle would increase from over $82,000 to over $141,000. Patricia also claimed about $70,000 from the trusts as trustee fees.

A few days later Patricia, as Rumac president, signed a "Memorandum of Action" announcing that she was redeeming half of the ELR trust's Rumac stock for $275 per share, a price based on a 2007 stock redemption agreement between Rumac shareholders. The Memorandum did not acknowledge a 2011 stock redemption agreement valuing Rumac stock at $350 per share. Patricia then canceled the ELR trust's stock certificate for the total shares and prepared a new certificate for the remaining half. Patricia deleted Gayle's name and signature line from the certificate and signed only Patricia's own.

Four days after Patricia redeemed Gayle's ELR trust stock, Gayle objected to Patricia redeeming any Rumac stock. The parties began protracted negotiations.

### 3.    Patricia's third proposed distribution

Patricia rescinded the stock redemption in January 2014. Gayle and her children filed suit against Patricia that same day, but Patricia was not made aware of the suit until October. Meanwhile Patricia sent Gayle a third proposed distribution in February. The new proposed distribution reflected a rescission of the stock redemption so the sisters would have equal Rumac shares. It also included the Erickson and Barber Notes, retained liquidation costs for the real estate, and restyled previous distributions as "cash advances." Patricia subtracted Gayle's "cash advance" from the new equalization payment, reducing the equalization payment by almost $100,000.

### C. Proceedings

#### 1. Gayle's first amended complaint; Patricia's counterclaim

Gayle and her children filed their amended and operative complaint in October. Gayle alleged that Patricia breached her fiduciary duties as trustee and as a director and officer of Rumac, that she committed fraud, and that she could not validly exercise voting rights over Gayle's stock. Gayle sought the following relief: (1) removing Patricia as a director and officer of Rumac; (2) removing Patricia as trustee of the KOR and ELR trusts; (3) removing Patricia's voting power over Gayle's Rumac stock; and (4) compensatory and punitive damages.

Patricia denied all claims. She counterclaimed for judicial approval of her trust administration and proposed final distribution. Patricia's proposed final distribution retained the existing valuations for the Erickson and Barber Notes but no longer included liquidation costs for the real estate. The final distribution thus would result in Gayle receiving cash, an equalization payment, and the Erickson Note. Patricia would receive both real properties, the Barber Note, and the Barber car loan. The sisters would retain equal shares of Rumac stock. In total each would receive over $1.5 million, including the stock value.

#### 2. Gayle's motion for summary judgment; the superior court's reformation of the Rude trusts

Before trial Gayle and Patricia cross-moved for summary judgment on the dispute over Gayle's stock-voting rights. Gayle argued that Section 9.03 of the KOR and ELR trusts — giving Patricia voting rights in any Rumac stock in Gayle's trust — was illegal. Patricia argued that the section's language and intent were clear and unambiguous and that there were a number of ways the trusts could be reformed to correspond to the Rudes' intent.

The superior court denied Gayle's motion and granted Patricia's in part. The court found that Section 9.03 of the KOR and ELR trusts established that the Rudes intended Patricia to have voting power over Rumac stock in Gayle's trust during Patricia's lifetime. But because Patricia was not a trustee of Gayle's trust, she lacked power to vote Gayle's Rumac stock. And Patricia could not create a separate trust solely for the Rumac stock without violating the Rumac stock redemption agreement. The court therefore reformed the trusts under AS 13.36.350(a)[1] to make Patricia co-trustee of Gayle's resulting trust, with the sole duty of voting any Rumac stock held in that trust. All other duties remained with the bank.

The case proceeded to a bench trial on Gayle's three remaining claims.

### 3.      Bench trial; the superior court's rejection of Gayle's claims

Trial took place in November 2015. The superior court issued its decision in March 2016. The court ruled that Gayle failed to prove her fraud claim. The court found that Patricia never misrepresented her ability to unilaterally redeem stock and that Gayle had proven no damages from the putative redemption. Although the redemption was invalid because it contradicted Rumac bylaws, the court stated that this did not amount to fraud.

The superior court declined to remove Patricia as trustee of the KOR and ELR trusts. The court found that Patricia committed only one breach of her fiduciary duty as trustee — using trust funds to maintain the Bootlegger's Cove property while letting her son live in it rent-free. The court found that Patricia's proposed distributions otherwise satisfied her duty to expeditiously administer the trusts and that all other duties

---

[1]      *See* AS 13.36.350(a) ("[A] court may reform the terms of an irrevocable trust, even if the trust instrument is not ambiguous, to conform to the settlor's intention if the failure to conform was due to a mistake of fact or law . . . and if the settlor's intent can be established by clear and convincing evidence.").

were "adequately performed." The court determined that the one breach could be cured as part of the final distribution and that removal was otherwise unnecessary.

The superior court declined to remove Patricia as a Rumac director and officer. The court noted that Patricia's unilateral redemption of the ELR trust's stock violated Rumac's bylaws, but it found that the redemption was not motivated by personal advantage because Patricia indicated willingness to rescind the redemption or redeem an equal portion of her own stock. The court otherwise found no past misconduct and no reason to believe the error would occur again.

Finally, the court generally approved Patricia's final distribution proposal. The court also ordered Patricia to submit a new distribution schedule conforming to the following changes: (1) she would reimburse the trusts for all expenses to maintain the Bootlegger's Cove property since July 2010; (2) the Bootlegger's Cove property was valued at $630,500, representing the $675,000 appraised value minus $44,500 in liquidation costs; (3) the Stuckagain Heights property was valued at $151,000, representing the $170,000 appraised value minus $19,000 in liquidation costs; (4) the $35,000 Erickson loan had been forgiven and would not be assigned to either family; and (5) the Barber Note and car loan were valued at $96,400, but $35,000 was forgiven.

### 4. Gayle's objections; final judgment

Patricia submitted a new proposed distribution conforming to the court's order. The proposed distribution reimbursed the KOR and ELR trusts about $75,000 for the Bootlegger's Cove property maintenance costs. The distribution otherwise valued the assets as the court ordered.

Gayle objected to Patricia's proposed final distribution, arguing that Patricia owed Gayle's trust prejudgment interest on the value of the Bootlegger's Cove property and its maintenance costs. The superior court ordered Patricia to pay prejudgment

interest on the value of the property and its maintenance costs to the KOR and ELR trusts.

Patricia submitted a revised proposed final distribution in September, and Gayle objected once again, arguing that Patricia's prejudgment interest payment on the value of the Bootlegger's Cove property should be made to Gayle's trust and not to the KOR and ELR trusts. Patricia responded that her breach had harmed both the KOR and ELR trusts and that the prejudgment interest payment made those trusts whole. In January 2017 the superior court approved Patricia's revised proposed final distribution, with prejudgment interest paid to the KOR and ELR trusts rather than to Gayle's trust.

### 5. First appeal

Gayle appealed, contending that the superior court erred by declining to remove Patricia from her Rumac positions and as trustee of the KOR and ELR trusts; by making Patricia co-trustee of Gayle's trust to vote her Rumac stock; by ordering the prejudgment interest payment to the KOR and ELR trusts instead of Gayle's trust; by effectively enforcing the Erickson Note against Gayle's trust by reducing the distribution; by discounting the Barber Note assigned to Patricia's trust; by assigning liquidation costs to the real properties; by allowing Patricia to retain trustee fees; and by allowing Patricia to reimburse her attorney's fees with KOR and ELR trust funds.

### 6. Post-judgment proceedings; Gayle's second appeal

The final judgment incorporated a distribution schedule awarding nearly $1 million in cash and bonds to Gayle's trust and approved tentatively reserving $60,000, half each from the KOR and ELR trust funds, for winding-up expenses. Patricia distributed over $870,000 to Gayle's trust by May. Later that month Patricia provided notification that Gayle's trust had been funded and that Patricia had increased the KOR and ELR trusts' reserves from $60,000 to $250,000 because the pending appeal meant those trusts could not be closed.

In late June Gayle moved to compel Patricia to distribute the remaining trust funds and to sanction her for violating the court's orders. The superior court granted the motion in part, ruling that Patricia had violated the court's judgment and that she needed to seek court permission before deviating from the final judgment. The court awarded Gayle attorney's fees for successfully moving to compel and held the remainder of the requested relief in abeyance until Patricia sought approval to deviate from the judgment or abided by its original terms.

Patricia moved to amend the judgment, requesting court approval to increase the trust reserves to $250,000. She also requested that the judgment be amended to include a new distribution schedule reflecting the current trust asset values. Gayle opposed, arguing that Patricia had not met her burden of proving that the increase in trust reserves was necessary and that amending the final distribution schedule would be tantamount to judicially approving Patricia's trust withdrawals since the final judgment date. Patricia replied with additional evidence supporting the amendments, and the superior court amended the judgment in November.

Gayle appealed, arguing that Patricia's actions constituted an additional violation of her fiduciary duty justifying her removal from other fiduciary positions. Gayle also argued that the superior court erred by granting the motion to amend and amending the final distribution schedule.

We consolidated Gayle's appeals for oral argument and consideration.

III.  **STANDARD OF REVIEW**

When deciding questions of law, we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[2] For mixed questions of law and

_____

[2]    *Bd. of Trs., Anchorage Police & Fire Ret. Sys. v. Municipality of Anchorage*, 144 P.3d 439, 445 (Alaska 2006) (citing *Rockstad v. Erikson*, 113 P.3d (continued...)

fact, "we review factual questions under the clearly erroneous standard and legal questions using our independent judgment."[3] We will find clear error only "when we are left with a definite and firm conviction based on the entire record that a mistake has been made."[4] "We will find an abuse of discretion upon a showing that a decision was 'arbitrary, capricious, manifestly unreasonable, or stemmed from improper motive.' "[5] We review claims not raised before the superior court only to the extent they may constitute plain error.[6]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion By Declining To Remove Patricia As Rumac Director And President.

Gayle argues for Patricia's removal as a director and president of Rumac for Patricia's breach of corporate fiduciary duty. The superior court found that Patricia violated the Rumac bylaws by unilaterally redeeming stock in the ELR trust, but the court declined to remove Patricia from her positions.

Alaska Statute 10.06.463 provides:

---

[2]    (...continued)
1215, 1219 (Alaska 2005)).

[3]    *Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1018 (Alaska 2009) (citing *A.M. v. State*, 945 P.2d 296, 304 n.10 (Alaska 1997)).

[4]    *Brown v. Knowles*, 307 P.3d 915, 923 (Alaska 2013) (quoting *In re Protective Proceedings of W.A.*, 193 P.3d 743, 748 (Alaska 2008)).

[5]    *Lindbo v. Colaska, Inc.*, 414 P.3d 646, 651 (Alaska 2018) (quoting *Tracy v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 279 P.3d 613, 616 (Alaska 2012)).

[6]    *Mitchell v. Mitchell*, 370 P.3d 1070, 1082 (Alaska 2016) (citing *Laughlin v. Laughlin*, 229 P.3d 1002, 1005 (Alaska 2010)).

The superior court may, at the suit of the board or the shareholders holding at least 10 percent of the number of outstanding shares of any class, remove from office a director for fraudulent or dishonest acts, gross neglect of duty, or gross abuse of authority or discretion with reference to the corporation and may bar from reelection a director removed in that manner for a period prescribed by the court. The corporation shall be made a party to the suit.

In deciding whether to remove a director, a court should consider:

(1) the egregiousness of the underlying violation; (2) the defendant's past record of misconduct; (3) the defendant's role or position at the time of the violation; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; . . . (6) the likelihood that the misconduct will recur. . . . [And (7)] whether there is reason to suspect that shareholder democracy will be insufficient to prevent reelection of an unfit director.[7]

Gayle argues that Patricia should be removed because she manipulated Gayle's stock holdings and devalued Rumac's share price from $350 to $275. Gayle also lists in her reply brief other breaches of Patricia's corporate duties, but these breaches all stem from the stock redemption, which the superior court found was "the one and only act in which Patricia . . . was shown not to have acted in accordance to the corporate bylaws."

The superior court found that Patricia had committed neither fraud nor egregious misconduct by redeeming the stock. The court also found that Patricia did not have intent to personally gain, that the violation had been cured, and that the violation likely would not occur again. In light of these findings, it was not unreasonable for the court to decline to remove Patricia as a Rumac director. And although AS 10.06.643 and our case law do not relate directly to officer removal, assuming the court had

---

[7]     *Martinez v. Cape Fox Corp.*, 113 P.3d 1226, 1233 (Alaska 2005).

discretionary authority to remove Patricia as Rumac president, it similarly was not unreasonable for the court to decline to do so.

Gayle also argues in her reply brief that the superior court made two clearly erroneous factual findings to support its decision not to remove Patricia as a Rumac director: that Gayle initiated the stock redemption and that Rumac was not harmed by the redemption. Gayle waived this argument by raising it for the first time in her reply brief.[8]

We therefore conclude that the superior court did not abuse its discretion by declining to remove Patricia as a director and president of the corporation.

### B. The Superior Court Did Not Abuse Its Discretion By Declining To Remove Patricia As Trustee Of The KOR And ELR Trusts.

Gayle argues that Patricia's breach of fiduciary duty in administering the KOR and ELR trusts warrants her removal as trustee. But AS 13.36.076 specifies four ways that a trustee may be removed: (1) by a trust protector; (2) by a person specified in the trust instrument; (3) under a procedure specified in the trust instrument; or (4) by a court. The KOR and ELR trusts did not create a trust protector, and the trusts provide that removal of a trustee may be accomplished only "in accordance with the provisions of the laws of the State of Alaska." Therefore Patricia may be removed only by a court.

To remove a trustee, a court must find that removal is "in the best interests of all the beneficiaries" and that either (1) "the trustee has committed a serious breach of trust" or (2) "a trustee is unfit, is unwilling, or persistently fails to administer the trust

---

[8]    *See Crittell v. Bingo*, 83 P.3d 532, 536 n.19 (Alaska 2004) (stating that issue raised for first time in reply brief is deemed waived); Alaska R. App. P. 212(c)(3) ("Th[e] [reply] brief may raise no contentions not previously raised in either the appellant's or appellee's briefs.").

effectively."[9]  A court also may remove a trustee for lack of cooperation among co-trustees or when all qualified beneficiaries request removal because of a substantial change in circumstances.[10]  These latter two provisions cannot apply because there are no co-trustees and Patricia has not requested her own removal.

The superior court found that Patricia violated her trustee duties by using trust funds to maintain the Bootlegger's Cove property while letting her son live in it rent free.  But the court concluded that "[i]n totality, Patricia . . . adequately performed her duties as trustee."  The court also found that Patricia was trustworthy, transparent, had not secreted money to her advantage, and had no bookkeeping irregularities.  The court therefore declined to remove Patricia as trustee.

Patricia's personal use of the Bootlegger's Cove property prior to its distribution to her undoubtedly was a breach of her fiduciary duties, but breach alone does not mandate removal.[11]  The superior court weighed Patricia's violation against "the totality of her efforts" and concluded that "[a]ll actions taken, whether procedurally correct or not, were made openly and with notice given to Gayle."  In light of these findings, the superior court's decision not to remove Patricia was not manifestly unreasonable and therefore not an abuse of discretion.

C.    **The Superior Court Did Not Abuse Its Discretion After Reforming The KOR And ELR Trusts By Allowing Patricia To Be Co-Trustee Of Gayle's Trust.**

Gayle argues that the superior court abused its discretion by naming Patricia co-trustee of Gayle's trust for Rumac voting purposes.  Gayle does not challenge the

---

[9]      AS 13.36.076(b)(1)-(2).

[10]      *Id.* at (b)(2).

[11]      *See* RESTATEMENT (THIRD) OF TRUSTS § 37 cmt. e (AM. LAW. INST. 2003).

court's reformation analysis, instead arguing that the court abused its discretion by allowing Patricia to be co-trustee of Gayle's trust in light of Patricia's previous fiduciary duty violations.

The superior court did not abuse its discretion by naming Patricia co-trustee of Gayle's trust for the sole purpose of voting Gayle's Rumac stock. As the court's summary judgment order explains, the KOR and ELR trusts established by clear and convincing evidence Olin's and Edna's intent to give Patricia sole power to vote all Rumac stock in Gayle's trust. The order also explains that Patricia would lack power to vote Rumac stock in Gayle's trust if not a trustee and that Patricia could not create a separate trust solely for the Rumac stock without violating the Rumac stock redemption agreement. This left reformation with Patricia as co-trustee of Gayle's trust the only remaining option to conform to the Rudes' intent.[12] The superior court thus did not err or abuse its discretion by reforming the KOR and ELR trusts to make Patricia co-trustee of Gayle's trust.

### D. The Superior Court Did Not Err By Ordering Patricia To Pay Prejudgment Interest To The KOR And ELR Trusts.

Gayle argues that the court erred by ordering Patricia to pay prejudgment interest to the KOR and ELR trusts, rather than to Gayle's trust, for Patricia's use of the Bootlegger's Cove property. The court ordered Patricia to pay interest to the trusts on both the property's value and maintenance costs. Gayle does not challenge the repayment of maintenance costs, but argues that "Patricia harmed Gayle by distributing the Bootlegger's Cove property to herself without an equal distribution to Gayle."

The superior court ordered Patricia to pay interest to the trusts because the home's value that accrued to Patricia should have accrued to the trusts. The court's

---

[12] *See* AS 13.36.350(a).

initial order stated that "[i]f [the Bootlegger's Cove property] was still a trust asset, [Patricia] would have been collecting rent from the tenant residing in the home." Had Patricia properly treated the Bootlegger's Cove property as KOR and ELR trust property, the appreciation and rents would have been received by those trusts — not Gayle's trust. The superior court thus did not commit legal error by ordering Patricia to repay the KOR and ELR trusts directly.

### E.    There Are Insufficient Findings To Justify Discounting The Barber And Erickson Notes.

Gayle argues that valuing the Barber Note below its full face value was error. She specifically contests the investor's appraisal which considered the likelihood of full payment being made. We previously have held that it was clear error for a superior court to assign a note its face value if there were little chance of recovering the loan.[13] But in this case the appraised value accounted for the likelihood of full payment. The superior court therefore did not clearly err by valuing the note below its full face value.

Gayle also argues that discounting the Barber Note by the value of the Erickson Note "was both an error of law . . . and an abuse of [the court's] discretion." The Barber Note — apparently a trust asset — secured by a deed of trust on real estate, was valued at $95,000 before the court's order. The Erickson Note — apparently a trust asset — secured by Maiken's Rumac stock, was valued at $35,000. The court ordered: "The Erickson loan is forgiven and the $35,000 asset will not be assigned to either trustee. . . . The Barber loan is forgiven in part, in the amount of $35,000."

The superior court's order does not explain how it decided the notes would be forgiven by $35,000. The court stated that "[n]either party presented evidence that

---

[13]    *Brosnan v. Brosnan*, 817 P.2d 478, 480-81 (Alaska 1991).

either grandparent ever intended for either note to be acted on as if their grandchild had defaulted on the loan." The court cited AS 13.36.109(19)[14] as authority for Patricia to release the trusts' potential claim against Maiken for $35,000 and noted that "keeping peace within the family does benefit the beneficiaries of the trust."

Nothing in the record supports a finding that the Rudes forgave the Erickson Note altogether or discounted the Barber Note by $35,000. Because the Erickson Note apparently was payable on demand,[15] as Gayle argues, had Maiken made no interest or principal payments for ten years the Note might have become unenforceable.[16] But the court did not determine whether the Erickson Note retained value or otherwise was barred by the statute of limitations and thus unenforceable. And even considering courts' broad equitable powers, there seems to be no basis in equity for the court sua sponte to forgive part of a loan held as a trust asset. With insufficient findings to explain the court's exercise of its equitable powers to forgive the Erickson Note and to discount the Barber Note by the value of the Erickson Note, we must vacate and remand for further consideration of these issues.

---

[14]     AS 13.36.109(19) ("[A] trustee may perform all actions necessary . . . . to pay or contest a claim, to settle a claim by or against the trust by compromise, arbitration, or otherwise, and to release, in whole or in part, a claim belonging to the trust.").

[15]     *See* AS 45.03.108(a)(2) ("A promise or order is payable on demand if it . . . . does not state a time of payment.").

[16]     *See* AS 45.03.118(b) ("[I]f demand for payment is made to the maker . . . an action to enforce . . . the note must be commenced within six years after the demand"; if there has not been a demand, enforcement "is barred if neither principal nor interest on the note has been paid for a continuous period of 10 years.").

**F.** **The Superior Court Did Not Abuse Its Discretion By Assigning Liquidation Costs To The Stuckagain Heights And Bootlegger's Cove Properties.**

Gayle next argues that the superior court erred by valuing the Bootlegger's Cove and Stuckagain Heights properties with liquidation costs. She argues that we should adopt a bright-line rule that "only allow[s] liquidation costs when they are a certainty due to an actual sale." Gayle's argument is not whether the value of the properties with the liquidation costs is correct, but whether the superior court could assign liquidation costs at all.

Gayle argues that "[a]bsent an actual sale, Alaska law allows sales costs to be considered only in the event of a forced sale." In support she cites three divorce cases holding that the superior court must consider liquidation costs if one party may be disadvantaged by those costs. But those cases do not hold that liquidation costs are available *only* in the case of actual or forced sales.[17] And as Patricia notes, liquidation costs in other contexts appropriately can be considered when "the possibility of sale" is all that is contemplated.[18] Adopting a bright-line rule that liquidation costs are never

---

[17] *See Day v. Williams*, 285 P.3d 256, 266-67 (Alaska 2012) (vacating and remanding because superior court failed to consider costs associated with forced sale of real property, and because it was unclear whether property distribution would be just and fair); *Beal v. Beal*, 88 P.3d 104, 117 (Alaska 2004) (affirming superior court's selling costs award to wife because wife was economically disadvantaged party); *Tollefsen v. Tollefsen*, 981 P.2d 568, 572 (Alaska 1999) (holding that "although the superior court expressly found that [wife] was the economically disadvantaged party, the court's failure to make provision for the costs of repairs and sale of the real property awarded to [wife] defeated its stated goal of awarding her the greater share of the marital estate").

[18] *See, e.g.*, AS 10.06.630(a) ("The fair value [of shares owned by plaintiffs in a suit for involuntary dissolution] shall be determined on the basis of the liquidation value, taking into account the possibility of sale of the entire business as a going concern in a liquidation.").

appropriate absent a certain sale thus would fail to acknowledge that liquidation costs may be appropriate when a sale is possible but not guaranteed.

In this case the superior court found reliable Patricia's accountant's "opinions regarding valuation methods used to wrap up the distribution of estate or trust assets." The court "relie[d] upon her testimony on those issues." The accountant testified that the liquidation costs were based on typical closing costs, that the liquidation costs were no more speculative than an appraisal of the property's market value would be, and that liquidation costs are not uncommon. Because the superior court reasonably could rely on this expert testimony, it did not abuse its discretion by applying liquidation costs to the Stuckagain Heights and Bootlegger's Cove properties.

## G. The Superior Court Did Not Abuse Its Discretion By Allowing Patricia To Retain Trustee Fees.

Gayle argues that the superior court abused its discretion by allowing Patricia to retain trustee fees charged to the KOR and ELR trusts despite breaching her fiduciary duties. The court ruled that "[t]he provisions regarding . . . trustee fees shall remain the same as the proposed distribution attached to the Proposed Final Judgment." That distribution provided for $28,500 in trustee fees. Gayle does not challenge this amount's reasonableness, but rather the court's decision to allow Patricia to retain trustee fees at all.

Trustee fees are governed by AS 13.36.078 and AS 13.36.198. These statutes provide that a trustee is entitled to reasonable compensation or compensation as dictated by the trust instrument unless the trustee violates fiduciary duties, in which case the trial court has discretion to deny compensation in whole or in part.[19]

---

[19] AS 13.36.078(1)(A) ("Except as otherwise provided in the trust instrument, . . . a trustee is entitled to be reimbursed out of the trust property, with interest as
(continued...)

The KOR and ELR trusts allowed Patricia to retain "reasonable compensation commensurate with services actually performed." The court found Patricia to be honest, trustworthy, and transparent, and it noted she "adequately performed her duties as trustee" considering "the totality of her efforts." These findings support the court's decision not to deny Patricia trustee compensation. It was therefore not unreasonable and not an abuse of discretion to allow Patricia to retain trustee fees.

## H. The Superior Court Did Not Abuse Its Discretion By Allowing Patricia To Reimburse Her Attorney's Fees With Trust Funds.

Gayle argues that the court abused its discretion by allowing Patricia to pay her legal fees with trust funds. Gayle argues that "[a]ttorney's fees are . . . not usually paid to a trustee when they have violated their fiduciary duties" and that "indemnification is ordinarily unavailable" when "the trustee is found to have committed a breach of trust."

Alaska Statutes 13.36.109 and 13.36.078 permit a trustee to be reimbursed for attorney's fees incurred on behalf of a trust.[20] The KOR and ELR trusts also authorize the trustee to act as "reasonably necessary" in administering each trust, including to "employ attorneys . . . and compensate them and pay their expenses from

---

[19] (...continued) appropriate, for . . . expenses that were properly incurred in the administration of the trust."); AS 13.36.198 ("If a trustee violates a provision of [the Alaska Trusts Act], the trustee may be removed as trustee . . . and denied compensation in whole or in part.").

[20] AS 13.36.109(24), (28) ("[A] trustee may perform all actions necessary to accomplish the proper management, investment, and distribution of the trust property, including . . . . to employ . . . . attorneys . . . [and] to prosecute or defend an action, claim, or proceeding in order to protect trust property and the trustee in the performance of the trustee's duties."); AS 13.36.078(1)(A) ("[A] trustee is entitled to be reimbursed out of the trust property, with interest as appropriate, for . . . expenses that were properly incurred in the administration of the trust.").

income or principal or both." The trusts further authorize the trustee to defend against lawsuits and "to retain such legal counsel and ancillary personnel as it may deem appropriate."

As trustee of the KOR and ELR trusts, Patricia was authorized to use the trusts' funds to defend suits against her as trustee. As explained above, the superior court found that "[i]n totality, Patricia . . . adequately performed her duties as trustee." In light of these findings, the superior court did not abuse its discretion by allowing Patricia to reimburse her attorney's fees with trust funds.

## I. The Superior Court Did Not Abuse Its Discretion By Subsequently Declining To Remove Patricia From Her Fiduciary Capacities After The Final Judgment.

Gayle argues that Patricia's violation of the court's final judgment was also a breach of her fiduciary duties. Gayle argues that following this breach, "[u]nder no circumstances should Patricia be allowed to act in any further fiduciary capacity in Rumac, Inc., the KOR and ELR trusts, and Gayle's trust."

Gayle failed to request this remedy from the superior court. Gayle requested an order compelling Patricia to deposit the withheld funds as well as additional funds into Gayle's trust, an order prohibiting Patricia from using trust funds to pay attorney's fees, and an order sanctioning Patricia, with attendant attorney's fees for Gayle. Gayle also sought an evidentiary hearing and oral argument. But at no point did Gayle argue to the superior court that Patricia's violation of the final judgment warranted her removal from fiduciary capacities.

Reviewing for plain error, we find no "obvious mistake" that would justify overruling the superior court's order.[21] The court allowed Patricia to increase trust

---

[21] *See Mitchell v. Mitchell*, 370 P.3d 1070, 1082 (Alaska 2016) ("[W]e review (continued...)

reserves based at least in part on her memorandum attributing the need to "unforeseen additional litigation and trust accounting expenses." Patricia's record keeping has never been called into question; the court previously concluded that Patricia was trustworthy, transparent, had not secreted money to her advantage, and had no bookkeeping irregularities. The court therefore did not commit plain error by allowing Patricia to continue serving in her fiduciary capacities.

### J.    The Superior Court Did Not Abuse Its Discretion By Granting The Motion To Amend The Final Judgment.

Gayle argues that the court erred by granting Patricia's motion to modify the final judgment and increase trust reserves without sufficient legal basis. Gayle argues that Patricia failed to prove "extraordinary circumstances" justifying relief under Alaska Rule of Civil Procedure 60(b)(6).

Whether to grant a motion to amend under Rule 60(b)(6)[22] is within the trial court's discretion and reviewed for abuse of discretion.[23] Gayle argues, however, for legal error because Patricia's moving papers were insufficient "as a matter of law" to justify relief under any circumstances. We decline to deviate from our normal standard of review.

Although Rule 60(b)(6) requires a showing of "extraordinary circumstances," the text provides broadly that a court may modify judgment for "any

---

[21]    (...continued) matters that were not raised below and not listed in a statement of points on appeal for plain error." (quoting *Laughlin v. Laughlin*, 229 P.3d 1002, 1005 (Alaska 2010))).

[22]    Alaska R. Civ. P. 60(b) ("On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . . [including for] (6) any other reason justifying relief from the operation of the judgment.").

[23]    *Johnson v. Johnson*, 394 P.3d 598, 600 (Alaska 2017).

other reason justifying relief from the operation of the judgment."[24]  We also have held that Rule 60(b)(6) "should be liberally construed to enable courts to vacate judgments whenever such action is necessary to accomplish justice."[25]  Patricia had the burden of proving that relief was proper under Rule 60(b)(6),[26] and she supported her motion with an affidavit and updated accounting of the trusts showing that over $430,000 had been expended on legal and accounting fees between 2010 and 2017, or over $60,000 per year.  Appeals can easily take over a year to conclude, and the original trust reserves were set at only $60,000.  Patricia's evidence therefore warranted an increase in trust reserves.  Amending the final judgment to provide for increased reserves to account for unanticipated litigation falls within the purpose of Rule 60(b)(6)'s catch-all provision. The superior court did not abuse its discretion by granting Patricia's motion to amend.

**K.      We Do Not Consider Gayle's Argument That The Superior Court Erred By Approving Patricia's Attorney's Fees Without Evidence Of Their Reasonableness.**

After being sanctioned for deviating from the original final judgment, in September 2017 Patricia moved to amend the judgment and increase reserves to account for continued litigation and trust expenses.  Included was a request to approve the trusts' post-judgment fees and taxes from the earlier judgment date of July 31, 2016 through May 2017, based on attached account statements.  Gayle generally objected to all post-judgment expenditures from the trusts because Patricia had not demonstrated reasonableness.  Gayle also tangentially challenged charging the trusts for legal fees

---

[24]      *See Juelfs v. Gough*, 41 P.3d 593, 597 (Alaska 2002).

[25]      *Id.* at 597 n.12 (emphasis omitted) (quoting *Clauson v. Clauson*, 831 P.2d 1257, 1261 (Alaska 1992)).

[26]      *See Sandoval v. Sandoval*, 915 P.2d 1222, 1224 (Alaska 1996) ("A party moving for relief from judgment has the burden of proving his entitlement to relief.").

associated with defending Patricia's actions as a Rumac officer and director in the first appeal, when Gayle separately argued that the trusts also should pay her legal fees and costs associated with that earlier appeal. This argument about paying Gayle's fees apparently was raised in response to the court's earlier order that Patricia, as trustee, could use trust funds to defend the first appeal. The request for payment of Gayle's attorney's fees and costs for the first appeal was not granted.

It is only the latter tangential point about attorney's fees and costs — and only those associated with defending Patricia in the first appeal regarding Rumac issues — that is on appeal, not the general objection to the reasonableness of the trusts' expenses. But we are not persuaded that this attorney's fees and costs issue properly was raised to the superior court as a stand-alone issue, when it was set out in only one sentence in a section actually directed to an argument that the court should order that the trusts pay Gayle's attorney's fees and costs in the first appeal. Although we do not consider Gayle's argument, we note that she is not precluded from raising this issue on remand after the current appeals are concluded.

## V.    CONCLUSION

We VACATE the superior court's order valuing the Erickson and Barber Notes and REMAND for further proceedings consistent with this opinion. In all other respects, we AFFIRM the superior court's decisions.